**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

FEDS FOR MEDICAL FREEDOM;

MARIE BALLERINI-HOUGNON;

DONALD CARROLL;

JANE CHUN;

DAVID GUERERRO;

HOMER HAWKINS;

WILLIAM HAYES;

MATTHEW HILTON;

DANIEL JACKSON;

LISA JONES;

CHERYL KOEVOET;

NANCY MCGAUVRAN;

CHRISTOPHER MILLER;

KAROLINA MILLER;

KEMMI SADLER;

KELLY MEDINA SANTIESTEBAN;

MARCUS THORNTON;

JOEL ZLOTNIK;

*Plaintiffs*,

v.

ANTONY J. BLINKEN, in his official

capacity as Secretary of the U.S. Department of State; THE U.S. DEPARTMENT OF STATE;

CAROL PEREZ in her official capacity as Director General of the Foreign Service and Director of Global Talent Bureau in the Bureau of Global Talent Management at the U.S. Department of State;

*Defendants*,

## COMPLAINT

1. In pursuit of its COVID-19 vaccination objectives, the U.S. Department of State (the "Department" or "State Department"), which has as one of its "central goal(s)" the "promotion of respect for human rights," including religious freedom as a "core objective," has turned its back on this mission with respect to the people who carry it out.

2. In an attempt to "render being unvaccinated so burdensome that those who haven't received shots will have little choice other than to get them,"[1] the Department set up a separate process for religious accommodation for those with religious objections to the COVID-19 vaccine.

3. Department employees with religious objections to the vaccines have endured various forms of physical invasion, lack of acknowledgement and accommodation, professional and interpersonal humiliation, privacy breaches, ostracism, harassment, and countless other instances of discriminatory behavior as a direct result of their sincerely held religious beliefs.

4. Ironically, the Department employs these individuals to uphold human rights throughout the globe. The Department then turns around and denies the same treatment to them, as if they wouldn't notice, but it is literally their job to know better. These individuals, whose mission it is to

---

[1] Maegan Vasquez, *Biden announces measures to incentivize COVID-19 vaccinations, including a requirement for federal employees*, CNN.com, (July 29, 2021), available at: https://www.cnn.com/2021/07/29/politics/joe-biden-vaccination-requirement-announcement/index.html (last visited, May 6, 2022).

fight for the ideals of liberty and respect for human rights, bring this suit to insist that the U.S. Department of State upholds the standards it claims to uphold, and to bring accountability to those who have made a mockery of its mission.

## PARTIES

5. Plaintiff Feds for Medical Freedom is a 501(c)(3) nonprofit organization with a nationwide membership of over 9,500 members. It formed to respond to legal abuses related to COVID-19 vaccine mandates and related interventions. All plaintiffs in this action are members of the organization.

6. Marie Ballerini-Hougnon had been the Community Liaison Office Coordinator at U.S. Embassy-Kuwait since August of 2020. Ms. Ballerini-Hougnon suffered two brain aneurysms and a cerebral hemorrhage after enlisting in the U.S. Army in 2009, and sought to avoid the vaccine out of concern that it may exacerbate or re-injure the condition that had led to these events. When she voiced these concerns, her Management Officer "laughed aloud" twice. Convinced that she would not receive a medical accommodation, Ms. Ballerini-Hougnon tendered her resignation rather than risk a serious health event. She resigned from the position that she "loved" on October 14, 2021.

7. Plaintiff Donald Carroll has been a Department of State employee since 2004, winning multiple awards throughout his career, including the Meritorious Honor and Group Superior Honor awards. While he received an accommodation for his religious beliefs, the Department has failed to recognize religious beliefs like his in its official communications insisting on vaccination. He has experienced COVID-19 policies treating him and his family different from others despite their religious beliefs.

8. Plaintiff Jane Chun is an IT specialist with nearly 20 years of experience at the State Department. As a Christian who desired to keep her body as a "temple of the Holy Spirit," she declined to take the vaccine. She was not able to request a religious accommodation in a timely

fashion because she was on maternity leave during the rollout of the vaccine and the religious accommodation process. Because of her religious beliefs, her career opportunities were limited. For example, her career opportunities require full vaccination status, and she was not able to participate.

9. Plaintiff David Guerrero is a Facility Manager and Post Occupational Health and Safety Officer who requested and received a religious accommodation. Despite his religious beliefs, the Consul General at his post openly "berate[d]" and "verbally ridicule[d]" those who did not have the vaccination in "rants" that were "silencing and shaming." He received random harassing emails about testing and his status, and his superiors required him to wear a mask when others did not have to. He felt "coercion at every level to go against a decision [he] had made" regarding the vaccination. When a booster became available, numerous co-workers voiced their concerns to him, stating that they did not want to take the vaccination in the first place, and were concerned that they would have to continue. His superiors banned him from the Marine Corps ball, although he worked in the same building on a daily basis with many of the same personnel who attended.

10. Plaintiff Homer Hawkins requested a religious accommodation from the vaccine that the Department never adjudicated. The Department failed to provide clarity for his inquiries into filing an EEO complaint. He was left to fear for his job security and his family's stability as the Department of State implemented its vaccination through "coercion, harassment, threats of job loss, and a demonstrated lack of consideration for individual medical sovereignty."

11. Plaintiff William Hayes is a Department employee who never attested to his vaccination status. In April of 2022, he was then enrolled in its testing / screening program without his consent, and his supervisor then began reminding him of the possibility of termination for not testing despite his being on leave at the time. The tests themselves were labeled "RX Only," distributed without a prescription, and without instructions on how to use them. He was furthermore instructed

to use a mask, singling him out from among his coworkers, despite their known uselessness[2] in protecting against a disease that his vaccinated coworkers were also capable of catching and spreading.[3] He requested an accommodation to testing but never received a response.

12. Plaintiff Matthew Hilton is a Special Agent with the Diplomatic Security Service at the Department. He holds sincere Christian religious beliefs in opposition to accepting the COVID-19 vaccination. He submitted a religious accommodation request but never received an answer. He also requested a religious accommodation for testing, for which he has not received a response. Because of his religious beliefs, he has had travel restricted for training and temporary duty assignments.

13. Plaintiff Daniel Jackson worked for the Department in Embassy Beijing. He declined the vaccination for medical reasons related to blood clotting. There, leadership encouraged staff to enter their vaccination appointments into a public calendar, which created a culture where the vaccination status of individual employees became a regular topic of discussion. This caused "tremendous, almost unbelievable stress" at the time of the implementation of the vaccine mandate. He was subjected to "constant commentary by other State Department personnel, in person and online, disparaging and vilifying other employees for their personal medical decisions." He described the atmosphere within the State Department as "intolerant."

13. Plaintiff Lisa Jones is a Foreign Service Officer who requested a religious accommodation to the COVID-19 vaccination mandate. She found the questioning she endured as part of the process to be invasive, such that, "any woman providing honest, fulsome answers to

---

[2]Bret Stephens, *The Masks Did Nothing. Will Any Lessons Be Learned,* N.Y. TIMES (Feb. 21, 2023), ("The most rigorous and comprehensive analysis of scientific studies conducted on the efficacy of masks for reducing the spread of respiratory illnesses — including Covid-19 — was published late last month. Its conclusions, said Tom Jefferson, the Oxford epidemiologist who is its lead author, were unambiguous. 'There is just no evidence that they' — masks — 'make any difference,' he told the journalist Maryanne Demasi"), https://www.nytimes.com/2023/02/21/opinion/do-mask-mandates-work.html.
[3]

those questions would have to provide her private views on abortion as well as her sexual and reproductive health history and practices[…]It felt like a deliberate attempt to humiliate and discourage women from requesting religious accommodations." She was further demoralized and humiliated to learn that the Department kept this information on file.

14. Plaintiff Cheryl Koevoet has worked for the Department since 2008 and is a Foreign Service Specialist in the Office Management Specialist cone. She declined vaccination because of sincerely held religious beliefs. This decision caused her to be quarantined upon her arrival at a new duty station in Brussels, immediately outing her as unvaccinated and causing strive with her new work colleagues, who had expected her to be available upon her arrival in country. She submitted a timely religious accommodation request on October 12, 2021, but never received any response. This led to a disastrous time at her new post, where she could not attend any mission social functions—essentially team-building exercises—including the annual Marine ball, Thanksgiving events, and parties at the Deputy Chief of Mission residence. Daily she encountered official ostracism and harassment over her decision, leading to stress that exacerbated numerous health ailments and that carried into her home life. All of this affected her son, who suffers from a severe form of autism. This factor in particular has led her to consider leaving the Foreign Service altogether. This entire episode is, in her words, "the worst period I have ever experience during my entire career."

15. Plaintiff Nancy McGauvran is a State Department Employee who declined to provide information regarding her vaccination status to the Department. She was forced to participate in the COVID-19 testing regime, all the while experiencing threats of discipline and termination.

16. Plaintiff Christopher Miller is a State Department employee forced to endure testing for COVID-19 against his sincerely held religious beliefs. He was denied travel to several of his constituent posts. He received ongoing pressure to accept the COVID-19 vaccination despite

sincerely held religious beliefs against taking them.

17. Plaintiff Karolina Miller is a State Department employee. The Department forced her to enter personal information regarding her vaccination status into a database, and the Department forced her to test for COVID-19 despite her religious beliefs. She was subject to continual coercive pressure to violate her religious beliefs regarding vaccination.

18. Plaintiff Kemmi Sadler is a Foreign Service Officer and Supervisory Special Agent with the Security Service. She has served the State Department and the U.S. Government for 19 years. She declined the vaccine and from that time has experienced the stress and anxiety of not knowing whether and when the Department would fire her, at a time that is only months from when she is set to retire. This uncertainty was great enough to delay attempts to expand her family.

19. Plaintiff Kelly Medina Santiesteban joined the State Department after the implementation of Executive Order 14043. When she inquired about a religious exemption to the COVID-19 vaccine mandate, the Department informed her that there was "not an accommodation avenue," citing an injunction of the Order. The Department went on to forward her private medical and religious information on to several different offices as she made her way through orientation and training. During that training, which was mandatory to continue at the Department, and had a strict 100% mandatory attendance because of Congressional mandates, she experienced the ongoing stress of knowing that, if she was exposed to COVID, she would have to quarantine for five days, potentially causing dramatic delays in her training and preparedness, and potentially threatening her future with the Department, when others had no quarantine requirement.

20. Plaintiff Marcus Thornton is a member of the Foreign Service and is the recipient of three Meritorious Honor Awards—two of those for being "a consistent advocate and defender of human rights and religious freedom." He was prepared to request a religious accommodation, but learned that the State Department had setup a completely different process for determining

eligibility for a religious accommodation regarding the COVID-19 vaccine. He recognized the issue and rather than participate in a different program for religious accommodation, he filed an Equal Employment Opportunity complaint with the State Department on October 28, 2021, which he formalized as a class complaint on January 27, 2022. Since that time, he has endured escalating discriminatory pressure to abandon his principles. For example, while he was enrolled at the Foreign Service Institute, he was prevented from entering campus during mandatory training. For more than two months, he was subject to weekly emails threatening disciplinary action, "up to and including separation."

21. Plaintiff Joel Zlotnik is a Physical Scientist with the Bureau of Consular Affairs since 2013. His religious beliefs (not from an organized religion, but sincerely held and occupying a similar place as organized religion in his life) prevented him from accepting the vaccine. He did not request a religious accommodation. For this he was subject to masking, COVID-19 testing, travel restrictions, and constant and repeated threats to his job.

22. Defendant U.S. Department of State is an Agency of the United States government. Its mission is "[t]o protect and promote U.S. security, prosperity, and democratic values and shape an international environment in which all Americans can thrive."

23. Defendant Antony Blinken is the Secretary of State for the United States and oversees the operations of the State Department, which include the COVID-19 vaccination, testing and masking policies at issue here. All plaintiffs are members of the Agency that he oversees.

24. Defendant Carol Perez is the Director General of the Foreign Service and Director of Global Talent Bureau in the Bureau of Global Talent Management at the State Department. She had direct involvement in the implementation of COVID-19-related personnel policies.

**JURISDICTION AND VENUE**

25. This Court has jurisdiction under 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 1331, 1346,

1361, 2201, under the United States Constitution, and pursuant to the Court's equitable powers.

110. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1361, 2201, 2202, and the Court's equitable powers.

26. Venue is proper under 28 U.S.C. § 1391(e)(1)(B) because the United States, one or more of its agencies, and one or more of its officers in his or her official capacity are Defendants; and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 28 U.S.C. § 1391(e)(1)(C) because the United States, one or more of its agencies, and one of its officers in his official capacity are Defendants, and Plaintiff Marcus Thornton resides in this District, and no real property is involved.

## FACTUAL AND PROCEDURAL BACKGROUND

27. COVID-19 was declared to have reached pandemic status in March of 2020.

28. On January 20, 2021, President Biden issued EO 13991, 86 Fed. Reg. 7045, which established a Safer Federal Workforce Task Force and charged it with "provid[ing] ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." 86 Fed. Reg. at 7046.

29. On September 9, 2021, President Biden announced that while "fully vaccinated" individuals are "highly protected from severe illness even if [they] get Covid-19," and that being fully vaccinated renders these individuals "as safe as possible," he was nonetheless issuing vaccine mandates "to protect vaccinated workers from unvaccinated co-workers." *Id*. One mandate directed that federal agencies create and implement the vaccine mandates for federal employees and contractors.

30. The President said he would "sign an executive order that will now require all executive branch federal employees to be vaccinated—all." Press Briefing by Press Secretary Jen Psaki,

July 23, 2021, https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/23/press-briefing-by-press-secretary-jen-psaki-july-23-2021/. That same day, he issued EO 14043, which states "it is necessary to require COVID-19 vaccination for all Federal employees, subject to such exceptions as required by law." 86 Fed. Reg. 50989. EO 14043 tasked every federal agency with "implement[ing], to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees." *Id*. at 50990. The Agencies were to receive "implementation" guidance from the Task Force, which would issue guidance within seven days. *Id.*

      31. The State Department implemented this mandate and in doing so, created a new process for requesting a religious exemption separate from its existing processes for requesting such exemptions.

      32. Since the implementation of the vaccination requirement, the State Department, in addition to setting up a novel procedure for religious accommodation related to it, has adopted an uneven, lackadaisical approach to issuing religious accommodations, while at the same time ratcheting up pressure on those who have expressed religious belief to vaccinate, despite their convictions. For example:

    a. On December 30, 2021, the Deputy Secretary for Management and Resources issued a Department Notice #93574, which strongly encouraged all employees and eligible family members to receive booster shots.

    b. On January 3, 2022, the Chief Medical Officer of the Department of State, Dr. Larry Padget, issued an email (subsequently published in Department Notice #93625) that again encouraged all employees to receive booster shots, and asserted that those who received boosters were less likely to die than those who had received the vaccines.

  c. On January 21, 2022, the Undersecretary for Management (M) issued Department Notice #93820. In it, M stated, "The most effective way to respond to the COVID-19 pandemic and the Omicron variant is to ensure that you have received a primary vaccine series and booster."

  33. In no Department correspondence has MED or any other Department leadership ever acknowledged those employees who have religious objections to the mandate or recognized their objections as legitimate. The Department has not acknowledged in any way – including with any focus on inclusivity or equity – this group of religious believers who cannot participate in the medical interventions that the Department has imposed on its workforce.

  34. At the same time, they receive both official and unofficial communications indicating that they are, by exercising their religious beliefs, endangering others and that the Department desperately wants them to act against those beliefs.

  35. These official communications have fostered an environment at the Department where indiscriminate ridicule pervades everyday conversation throughout the Department, sending the clear message that those with disfavored religious beliefs are unwanted or that their beliefs are unwanted.

  36. The Department has done nothing to mitigate either this discriminatory environment or these discriminatory acts.

  37. As indicated above, Plaintiff Marcus Thornton recognized that the Department had set up a new and different religious accommodation approach for religious belief related to the COVID-19 vaccination. Rather than participate in a different program for religious accommodation, he filed an Equal Employment Opportunity complaint with the State Department on October 28, 2021, which he formalized as a class complaint on January 27, 2022.

  38. As part of the discriminatory treatment he received as a religious objector, leadership required Mr. Thornton to test using nasal swabs. The Foreign Service Institute (FSI) in Arlington,

Virginia, issued him tests labeled "RX-Only" without a prescription, by non-medical personnel, and without instruction regarding how to use the swabs properly. His inquiries did not result in the Department's acknowledgment of the inappropriateness of its approach.

39. Mr. Thornton's complaint progressed, and after a request for information and a status conference, on October 26, 2022, Administrative Judge Meghan A. Droste issued an order denying both the class certification and the underlying claims.

40. The Department issued a letter fully implementing the decision of the Administrative Judge on November 29, 2022.

## CLAIMS FOR RELIEF
## COUNT ONE
### (Title VII Religious Discrimination: failure to accommodate)

41. As the Supreme Court has stated,

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's" "religious observance and practice." […] when an applicant requires an accommodation as an "aspec[t] of religious . . . practice," it is no response that the subsequent "fail[ure] . . . to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015)

42. The Department of State has failed to accommodate Plaintiffs Hawkins, Hayes, Hilton, Koevoet, and Medina Santaesteban.

43. In the Americans with Disabilities Act contect, courts have found that that delay in providing an accommodation amounts to a failure to accommodate. *See e.g.*, *Matos v. Devos*, 317 F. Supp. 3d 489 (D.D.C. 2018).

44. The Tenth Circuit has furthermore held that the principle of delay-as-discrimination translates into the context of religious accommodation. In *Tabura v. Kellogg USA*, 880 F.3d 544,

550 (10th Cir. 2018), the 10th Circuit Court of Appeals cited both religious accommodation and ADA case law for the proposition that "Title VII requires that an employer, short of undue hardship, make reasonable accommodations to the religious needs of its employees." (citations ommitted).

45. The 6th Circuit, has found that in the context of a Title VII religious discrimination claims, that "'a week-to-week, wait-and-see posture' amounts to no accommodation at all," in a case where an employee sought accommodation to work on Saturdays to meet his religious obligations. *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 945 (6th Cir. 2006)[citing *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991)].

46. Furthermore, in *Doster v. Kendall*, No. 1:22-cv-84, 2022 U.S. Dist. LEXIS 125400, at *10-13 (S.D. Ohio July 14, 2022), the court treated both delay and denial of religious accommodation as "injury" for the purpose of class certification analysis in a Religious Freedom Restoration Act / First Amendment case.

47. The Department in this case has delayed accommodation with respect to accommodations related to vaccination and / or testing. This delay amounts to a denial of accommodation. While the Department may state that an injunction preventing the enforcement of the mandate is the reason for the delay, the injunction could disappear any day, leaving unaccommodated religious believers to suffer employment consequences.

48. The stress of knowing that these difficulties could drop back into their lives at any moment has followed these individuals around for over a year.

## COUNT TWO
### (Title VII Religious Discrimination)

49. The Civil Rights Act of 1964 states in relevant part:

> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

50. These religious believers (Plaintiffs Carroll, Chun, Guerrero, Hawkins, Hayes, Hilton, Jones, Koevoet, Miller (C), Miller (K), Sadler, Santaesteban, Thornton, and Zlotnik), have experienced "outing" experiences such as masking, testing, and forced absence from office-wide work gatherings. The testing itself was physically invasive and uncomfortable, while at the same time scientifically unjustified. They were forced to use a different and invasive procedure for acquiring religious accommodation, and many received no accommodation at all. Many lost opportunities for travel, temporary assignments, and opportunities at career advancement because of their religious beliefs. The Department fostered a pervasive environment of religious discrimination in violation of Title VII of the Civil Rights Act according to both disparate impact and disparate treatment theories of discrimination.

## COUNT THREE
### (Religious Freedom Restoration Act)

51. The Religious Freedom Restoration Act states in relevant part: "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."

52. Here, with respect to Plaintiffs Carroll, Chun, Guerrero, Hawkins, Hayes, Hilton, Jones, Koevoet, Miller (C), Miller (K), Sadler, Santaesteban, Thornton, and Zlotnik, the Department has burdened the exercise of religion by forcing religious believers to accept invasive and painful

testing, stigmatizing masking, loss of professional opportunities, unequal accommodation procedures, and a culture of harassment and ridicule because of their disfavored religious beliefs.

53. In doing so, it has not pursued the least restrictive means, as other approaches were available and previously utilized. It has not done so in pursuit of legitimate government ends, as vaccination did not prevent the transmission of COVID, and neither did masks.

## COUNT FOUR
### (Americans With Disabilities Act)

54. The Americans with Disabilities Act defines the term "disability," with respect to an individual: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

55. The Department's vaccine, testing, masking, and other COVID-19 mitigation requirements have as their rationale the prevention of the spread of COVID-19. The spread of COVID-19 can only happen when a person has COVID-19, which is an infectious disease, which is a disability under the Rehabilitation Act. *See*, *School Board of Nassua County v. Arline.* 107 S.Ct. 1123 (1987)(treating tuberculosis as "handicapped" for purposes of the Rehabilitation Act). By virtue of these measures, the Department is treating all Plaintiffs as those with an infectious disease, which is a disability.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

A. Hold unlawful and set aside the Department's discriminatory COVID-19 vaccination and testing policies.

B. Issue injunctive relief from enforcing all discriminatory COVID-19 vaccination and testing policies.

C. Issue declaratory relief declaring Defendants' actions unlawful

D. Award appropriate monetary damages for injuries suffered;

E. Award reasonable attorneys' fees and allowable costs, including under the Equal Access to Justice Act.

F. Grant Plaintiffs such other and further relief to which they are justly entitled at law and in equity.

Dated: February 27, 2023

Respectfully Submitted,

_____

E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
20 E. 8th Street, Suite 3
Front Royal, VA 22630
(540) 631-4081
scott@lloydlg.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I will cause the foregoing to be served upon the Department on February 28, 2023.

_____
SCOTT LLOYD