**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |
|---|---|
| MARCUS THORNTON, *et al*.,<br><br>              Plaintiffs,<br><br>        v.<br><br>ANTONY J. BLINKEN, in his official capacity as Secretary of the U.S. Department of State and in his individual capacity, *et al*.,<br><br>           Defendants. | Civil Action No. 1:23-cv-0266-PTG-IDD |

**MEMORANDUM IN SUPPORT OF THE INDIVIDUAL CAPACITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' INDIVIDUAL CAPACITY CLAIMS**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**RELEVANT PROCEDURAL HISTORY & PLAINTIFFS' ALLEGATIONS**...................3

**STANDARD OF REVIEW**...................................................................................5

    **A.**  **Rule 12(b)(1)**.........................................................................5

    **B.**  **Rule 12(b)(6)**.........................................................................5

**ARGUMENT**....................................................................................................7

**I.**  **Plaintiffs' Damages Claims Are Barred by Sovereign Immunity.**...............................7

**II.**  **The Individual Capacity Defendants are Entitled to Qualified Immunity.**...................9

  A.  The qualified immunity framework............................................................10

    1.  Plaintiffs have failed to plausibly state a claim for which relief can be granted............12

    a. Religious Exercise. ...................................................................13

    b. Substantial Burden.....................................................................15

    2.  Plaintiffs do not allege the Individual Capacity Defendants were personally involved in violating their rights. ............................................................................17

    3.  Plaintiffs fail to plausibly allege the violation of a clearly established right under RFRA. 22

**III.**  **Plaintiffs' Allegations Do Not Support the Availability of Damages Against High-Ranking Federal Officials as "Appropriate Relief" Under RFRA.**........................................24

    **CONCLUSION** ...................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Bain*,
  697 F.2d 1213 (4th Cir. 1982) ............................................................................... 5

*Ajaj v. Fed. Bureau of Prisons*,
  25 F.4th 805 (10th Cir. 2022) ................................................................................ 10

*Am. Life League, Inc. v. Reno*,
  47 F.3d 642 (4th Cir. 1995) ................................................................................... 13

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ...................................................................................... 10, 23

*Antietam Battlefield KOA v. Hogan*,
  461 F. Supp. 3d 214 (D. Md. 2020) ......................................................................... 26

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................................. 10, 11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... passim

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 5, 6

*Benzman v. Whitman*,
  523 F.3d 119 (2d Cir. 2008) .................................................................................. 26

*Brooks v. Chapman*,
  No. 1:22-cv-305 (LMB/JFA), 2022 WL 17852779 (E.D. Va. Dec. 22, 2022) ......................... 20

*Brown v. Bureau of Prisons*,
  No. 3:14-cv-681 (RNC), 2017 WL 1234104 (D. Conn. Mar. 31, 2017) ................................ 12

*Bundy v. Sessions*,
  812 F. App'x 1 (D.C. Cir. 2020) ............................................................................. 19

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ............................................................................................ 13

*California-Nevada Ann. Conf. of the Methodist Church v. City & Cnty. Of San Francisco*,
  74 F. Supp. 3d 1144 (N.D. Cal. 2014) ...................................................................... 14

*Carmichael v. Sebelius*,
  No. 3:13-cv-129, 2013 WL 5755618 (E.D. Va. Oct. 23, 2013) .................................. 13, 15

*Cheney v. U.S. Dist. Court for D.C.*,
  542 U.S. 367 (2004) ............................................................................................ 25

*Cooper v. True*,
  No. 16-cv-02900-MJD-KMM, 2017 WL 6375609 (D. Minn. Nov. 2, 2017) .......................... 12

*Curry v. Gonzales*,
  No. 07-cv-0199 (JR), 2007 WL 3275298 (D.D.C. Nov. 6, 2007) .................................... 19

*D.C. v. Wesby*,
  583 U.S. 48 (2018) ...................................................................................... 11, 16

*Daugherty v. Sheer*,
  891 F.3d 386 (D.C. Cir. 2018) ............................................................................... 23

*Davila v. Gladden*,
  777 F.3d 1198 (11th Cir. 2015) .............................................................................. 10

*Davis v. Fed. Bureau of Prisons*,
  No. 15-cv-0884-WJM-MJW, 2017 WL 11504857 (D. Colo. Apr. 7, 2017) ............................ 19
*Dugan v. Rank*,
  372 U.S. 609 (1963) ............................................................................................................... 7
*Fazaga v. FBI*,
  965 F.3d 1015 (9th Cir. 2020) ....................................................................................... 10, 12
*Feds for Med. Freedom v. Biden*,
  581 F. Supp. 3d 826 (S.D. Tex. 2022) ....................................................................................1
*Fernandez-Torres v. Watts*,
  No. 2:16-cv-24, 2017 WL 9485591 (S.D. Ga. Jan. 30, 2017) .............................................. 12
*Freeman v. United States*,
  556 F.3d 326 (5th Cir. 2009) ............................................................................................... 25
*Godbey v. Wilson*,
  No. 1:12-cv-1302 (TSE/TRJ), 2014 WL 794274 (E.D. Va. Feb. 26, 2014) ....................... 16, 17
*Goodall v. Stafford Cnty. Sch. Bd.*,
  60 F.3d 168 (4th Cir. 1995) ................................................................................................. 13
*Guam v. Guerrero*,
  290 F.3d 1210 (9th Cir. 2002) ............................................................................................. 14
*Hager v. Ark. Dep't of Health*,
  735 F.3d 1009 (8th Cir. 2013) ...............................................................................................6
*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ............................................................................................................ 10
*Harvey v. Cable News Network, Inc.*,
  48 F.4th 257 (4th Cir. 2022) .................................................................................................6
*Heap v. Carter*,
  112 F. Supp. 3d 402 (E.D. Va. 2015) ........................................................................ 15, 16, 17
*Hedgpeth v. Rahim*,
  893 F.3d 802 (D.C. Cir. 2018) ............................................................................................. 11
*Henley v. Simpson*,
  527 F. App'x 303 (5th Cir. 2013) ........................................................................................7, 8
*Hope v. Pelzer*,
  536 U.S. 730 (2002) ............................................................................................................ 22
*Idaho v. Coeurd'Alene Tribe of Idaho*,
  *521* U.S. 261 (1997) ..............................................................................................................8
*In re World Trade Ctr. Disaster Site Litig.*,
  521 F.3d 169 (2d Cir. 2008) ................................................................................................ 26
*Jacobson v. Massachusetts*,
  197 U.S. 11 (1905) .............................................................................................................. 22
*Jordan v. Davis*,
  No. 22-cv-1541-ELH, 2023 WL 2478862 (D. Md. Mar. 13, 2023) ....................................... 18
*Kaemmerling v. Lappin*,
  553 F.3d 669 (D.C. Cir. 2008) ....................................................................................... 15, 17
*Kentucky v. Graham*,
  473 U.S. 159 (1985) ..............................................................................................................9
*Kim v. Coppin State Coll.*,
  662 F.2d 1055 (4th Cir. 1981) ....................................................................................... 20, 25

iv

*Lawhon v. Edwards*,
  477 F. Supp. 3d 428 (E.D. Va. 2020) ............................................................6, 7
*Lebron v. Rumsfeld*,
  670 F.3d 540 (4th Cir. 2012)................................................................... 10, 12
*Liberty Univ., Inc. v. Lew*,
  733 F.3d 72 (4th Cir. 2013)........................................................... 15, 16, 17
*Lindsay v. Public Service Co. of N.C.*,
  No. 90-2358, 1991 WL 16135 (4th Cir. Feb. 13, 1991) ...........................20
*Lovelace v. Lee*,
  472 F.3d 174 (4th Cir. 2006)................................................................... 15, 16
*Luder v. Endicott*,
  253 F.3d 1020 (7th Cir. 2001).....................................................................8, 9
*Mayfield v. NASCAR*,
  674 F.3d 369 (4th Cir. 2012)..........................................................................6
*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ........................................................................................3
*Moseley v. Price*,
  300 F. Supp. 2d 389 (E.D. Va. 2004) ..........................................................20
*Mullenix v. Luna*,
  577 U.S. 7 (2015) ..........................................................................................11
*Murphy v. Collier*,
  139 S. Ct. 1475 (2019)..................................................................................16
*Owens v. Baltimore City State's Atty's Off.*,
  767 F.3d 379 (4th Cir. 2014)..........................................................................6
*Palmieri v. United States*,
  896 F.3d 579 (D.C. Cir. 2018) ............................................................... 11, 23
*Patel v. Bureau of Prisons*,
  125 F. Supp. 3d 44 (D.D.C. 2015) ................................................................19
*Pearson v. Callahan*,
  555 U.S. 223 (2009) ......................................................................................10
*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ......................................................................................7, 8
*Potts v. Holt*,
  617 F. App'x 148 (3d Cir. 2015).....................................................................10
*Application of President & Directors of Georgetown Coll., Inc.*,
  331 F.2d 1000 (D.C. Cir. 1964) ...................................................................22
*Prince v. Massachusetts*,
  321 U.S. 158 (1944) ......................................................................................22
*Rasul v. Myers*,
  563 F.3d 527 (D.C. Cir. 2009) ......................................................................12
*Reichle v. Howards*,
  566 U.S. 658 (2012) ............................................................................... 11, 23
*Rondigo, L.L.C. v. Twp. of Richmond*,
  641 F.3d 673 (6th Cir. 2011)..........................................................................6
*Ruvalcaba v. Angleton Indep. Sch. Dist.*,
  No. 20-40491, 2022 U.S. App. LEXIS 3213 (5th Cir. Feb. 4, 2022)........................6

*Saucier v. Katz,*
   533 U.S. 194 (2001) ....................................................................................12, 17
*Schoonover v. Clay Cnty. Sheriff's Dep't,*
   No. 20-1680, 2023 WL 4026091 (4th Cir. June 15, 2023) ....................................11
*Smith v. Ozmint,*
   578 F.3d 246 (4th Cir. 2009)....................................................................................15
*Sossamon v. Texas,*
   563 U.S. 277 (2011) ....................................................................... 2, 7, 9, 24
*Spotts v. United States,*
   613 F.3d 559 (5th Cir. 2010)....................................................................................26
*Tangreti v. Bachmann,*
   983 F.3d 609 (2d Cir. 2020)....................................................................................17
*Tanvir v. Tanzin,*
   894 F.3d 449 (2d Cir. 2018)....................................................................................24
*Tanzin v. Tanvir,*
   141 S. Ct. 486 (2020)....................................................................... 10, 24, 27
*Taylor v. Reilly,*
   685 F.3d 1110 (D.C. Cir. 2012) ..............................................................................11
*United States v. Bauer,*
   84 F.3d 1549 (9th Cir. 1996)....................................................................................14
*United States v. Horton,*
   No. 19-cr-115-ELH, 2023 WL 3390910 (D. Md. May 10, 2023) ..........................26
*Walden v. Centers for Disease Control & Prevention,*
   669 F.3d 1277 (11th Cir. 2012)................................................................................14
*Webman v. Fed. Bureau of Prisons,*
   441 F.3d 1022 (D.C. Cir. 2006) ................................................................................9
*White v. Sherrod,*
   No. 07-cv-821-MJR, 2009 WL 196332 (S.D. Ill. Jan. 28, 2009) ...........................19
*Williamson v. Stirling,*
   912 F.3d 154 (4th Cir. 2018)....................................................................................22
*Wilson v. Layne,*
   526 U.S. 603 (1999) ................................................................................................23
*Ziglar v. Abbasi,*
   582 U.S. 120 (2017) .........................................................................................passim
*Zirpolo v. Williams,*
   No. 19-cv-2024-WJM-KMT, 2020 WL 3104078 (D. Colo. June 11, 2020)...........19
*Zucht v. King,*
   260 U.S. 174 (1922) ................................................................................................22

## Statutes, Rules, and Other Authorities

42 U.S.C. § 2000bb-1...................................................................................13, 22, 23
Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021).................................1, 13
Fed. R. Civ. P. 12(b)(1)..................................................................................................5
HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020),
   https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.................26
Prabhat Jha, Patrick E. Brown & Rashid Ansumana, *Counting the global COVID-19*
   *dead*, Lancet, May 6, 2022, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9075854/.........26

## INTRODUCTION

Plaintiffs—a proposed putative class of 25 current or former U.S. Department of State employees—seek to hold high-level State Department officials, specifically Secretary of State Antony J. Blinken, Director General of the Foreign Service Marcia Bernicat, and former Director General of the Foreign Service Carol Perez ("Individual Capacity Defendants"), personally liable under the Religious Freedom Restoration Act (RFRA) for allegedly "burden[ing] the exercise of [their] religion." *See* Sec. Am. Class Compl., ECF No. 41, at ¶ 207. No other individual capacity claims are alleged.

Plaintiffs do not seek to hold the Individual Capacity Defendants responsible for implementing the COVID-19 vaccine mandate.[1] Rather, Plaintiffs claim the Individual Capacity Defendants were *personally* responsible for substantially burdening their religion because Plaintiffs were required to answer a questionnaire to seek a religious accommodation, get regularly tested for COVID-19, wear facial masks, socially distance, and avoid travel. *Id.* at ¶¶ 65-66, 70, 74, 140, 142, 207.

While Plaintiffs allege that their agency's requirement of masking, COVID-19 testing, and other safety policies generally burdened the exercise of their religion under RFRA, they fail

---

[1] On September 9, 2021, "to promote the health and safety of the Federal workforce and the efficiency of the civil service," President Biden issued Executive Order 14043, which required all federal employees to become fully vaccinated against COVID-19, subject to exceptions required by law. Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021). While Plaintiffs mention the vaccine mandate, they readily acknowledge that the temporary vaccine mandate has not been in effect since January 21, 2022, *see* Sec. Am. Class Compl. at ¶ 84, when a nationwide injunction enjoined federal agencies from enforcing E.O. 14043 as to their employees. *See also Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836-37 (S.D. Tex. 2022), *aff'd on reh'g en banc*, 63 F.4th 366 (5th Cir. 2023). Plaintiffs also admit that on May 12, 2023, the President rescinded agency policies premised on E.O. 14043 and directed federal agencies to no longer implement or enforce them. *See* Sec. Am. Class Compl. at ¶ 86. *See also* Revocation E.O. at §§ 2–3.

to specify not only their religion, but also the religious exercise that was burdened or the way in which it was burdened. Out of the 25 Plaintiffs, only Plaintiff Marcus Thornton alleges a few aspects of his sincerely held Christian beliefs—nothing more regarding religious exercise is alleged from him or the other Plaintiffs. *Id.* at ¶¶ 9, 181, 201. Conspicuously absent from the Complaint are allegations explaining how the Individual Capacity Defendants burdened the exercise of Plaintiff Thornton's religion. In fact, as to all Plaintiffs, the Complaint is completely devoid of any allegations demonstrating how the Individual Capacity Defendants were involved or how they personally impacted Plaintiffs' religious practices. Instead, Plaintiffs' Complaint relies exclusively on conclusory allegations to support their RFRA claim against the Individual Capacity Defendants, who appear to be named simply because of their title or office. *Id.* ¶¶ 42-44. Such allegations attempt to circumvent the requirement to demonstrate the personal liability of the Individual Capacity Defendants, and, at best, indicate supervisory conduct, which cannot be the basis for individual capacity liability. Plaintiffs' novel attempt to create a RFRA class action to obtain damages personally from individual federal employees for simply holding a high-level position in an agency that issued COVID-19 protocols as part of official government-wide policy is misguided.

Several reasons support this conclusion. First, dismissal is warranted because Plaintiffs' RFRA claims challenge official policy and ultimately run against the federal government itself, which cannot be sued for damages under RFRA. *See Sossamon v. Texas*, 563 U.S. 277, 286-88 (2011) (interpreting language identical to RFRA in the Religious Land Use and Incarcerated Persons Act). Second, the Individual Capacity Defendants are entitled to qualified immunity for three reasons: (1) the Complaint fails to allege sufficient facts to establish a plausible RFRA violation by any of the Individual Capacity Defendants, *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); (2) the Complaint fails to allege personal involvement by the Individual Capacity Defendants, making damages inappropriate relief in this case; and (3) the Complaint fails to plausibly "state a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Iqbal*, 556 U.S. at 678 (2009). And third, Plaintiffs' attempt to hold the Individual Capacity Defendants responsible for a nationwide policy during a global pandemic should not be considered "appropriate relief" under RFRA. For these reasons, the Court should dismiss the sole individual capacity claim under Count Four pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).[2]

## RELEVANT PROCEDURAL HISTORY & PLAINTIFFS' ALLEGATIONS

Plaintiffs commenced this action on February 27, 2023. *See* Compl., ECF No. 1. On March 20, 2023, Plaintiffs filed an Amended Complaint that included individual capacity claims alleging RFRA violations against Defendants Blinken and Perez. *See* Am. Compl., ECF No. 7. On March 21, 2023, Plaintiffs "corrected" their complaint via "Notice of Errata" to include official and individual capacity claims alleging a RFRA violation against Defendant Bernicat. *See* Notice, ECF No. 9, & Corr. Am. Compl., ECF No. 9-1. On August 21, 2023, Plaintiffs, with the consent of all parties, filed a Second Amended Class Complaint.[3] *See* Sec. Am. Class Compl., ECF No. 41. Despite these amendments and corrections, Plaintiffs have failed to plead sufficient allegations to support a meritorious RFRA claim against the Individual Capacity Defendants.

---

[2] The Individual Capacity Defendants join and incorporate the Official-Capacity Defendants' argument under Point IV, that Plaintiffs' class action claims should be dismissed. *See* Official-Capacity Defendants' Motion to Dismiss.

[3] At this time, the Individual Capacity Defendants do not concede that the purported class identified in the Complaint is proper and do not agree to its certification.

The crux of Plaintiffs' pleading failure is straightforward; the Complaint fails to identify how each Individual Capacity Defendant personally participated in the alleged harm to them. Instead, Plaintiffs collectively allege "the Department" burdened their "exercise of religion" by "continuously threatening disciplinary action and termination, actually and constructively removing them from their posts, forcing religious believers to accept invasive and painful testing, stigmatizing masking, [causing the] loss of professional opportunities, [providing] unequal accommodation procedures, and [creating] a culture of harassment and ridicule because of their disfavored religious beliefs." *See id.* at ¶ 207. Regarding the Individual Capacity Defendants, Plaintiffs merely allege that: (1) Defendant Blinken "oversees the operations of the State Department, which include the COVID-19 vaccination, testing and masking policies;" (2) Defendant Perez "had direct involvement in the implementation of COVID-19-related personnel policies;" and (3) Defendant Bernicat "continued the policies of her predecessor, resulting in the discrimination complained of" in the Complaint. *See id.* at ¶¶ 42-44. No other allegations even mention the Individual Capacity Defendants by name or title.

While there are 25 Plaintiffs named, the Complaint itself implies that not all 25 Plaintiffs are alleging a RFRA violation. *See id.* at ¶ 95, n.5. In fact, the Complaint alleges that upon information and belief 19 Plaintiffs "filed an actual request for a religious accommodation to the vaccine or did not file a written request (because they objected to the new process . . .) but made their religious objections to the vaccine known to leadership orally and/or via EEOC Complaint." *Id*. at ¶ 71. However, it cannot be ascertained from the Complaint exactly how many Plaintiffs are alleging a RFRA violation. *Id*. Of the 25 Plaintiffs, five were granted some sort of accommodation, *id*. at n.11 (acknowledging that Plaintiffs Donald Carroll, Jane Chun, David Guerrero, Christopher Kelly, and Christina Williams were granted accommodations without

4

specifying what type), and at least one of the 19 Plaintiffs—Thornton—never even sought one. *See id*. at ¶ 67 (noting that rather than seek a religious accommodation Plaintiff Thornton filed an Equal Employment Opportunity complaint). Adding to their RFRA claim ambiguity, Plaintiffs also never alleged the time frame when these religious accommodations were sought so it is not at all clear whether the vaccine mandate was even in effect.

## STANDARD OF REVIEW

### A.  Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). One way to challenge subject matter jurisdiction through a Rule 12(b)(1) motion is by asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, a Rule 12(b)(1) motion may challenge subject matter jurisdiction by asserting that, as a factual matter, the plaintiff cannot meet his burden of establishing a jurisdictional basis for the suit. *See id.* Under this approach, to determine whether jurisdiction exists, a trial court may consider evidence extrinsic to the complaint. *Id.*

### B.  Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) serves to test the legal sufficiency of the plaintiff's complaint. Although a court must accept as true all well-pled allegations in adjudicating such a motion, it need not credit allegations that are merely conclusory. *See Iqbal,* 556 U.S. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations must raise a right to relief "above the speculative level." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 273 (4th Cir. 2022) (citing *Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012)). These considerations apply fully to cases involving qualified immunity. *See Owens v. Baltimore City State's Atty's Off.*, 767 F.3d 379, 396 (4th Cir. 2014) ("A qualified immunity defense can be presented in a Rule 12(b)(6) motion"). A court must consider whether the plaintiff has stated "a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (dismissing the claim under qualified immunity where plaintiff did nothing more than allege conclusory assertions); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) ("[j]ust as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted . . . so we review an assertion of qualified immunity to determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law'"); *Lawhon v. Edwards*, 477 F. Supp. 3d 428, 436 (E.D. Va. 2020) ("A complaint must provide sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Allegations have facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations and quotations omitted). The pleaded facts must be viewed in the light most favorable to the plaintiff, but a court should "neither 'strain to find inferences favorable to the plaintiffs,' nor 'accept conclusory allegations' or 'unwarranted deductions.'" *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 U.S. App. LEXIS

3213, at *7 (5th Cir. Feb. 4, 2022) (internal citations omitted). *See also Lawhon*, 477 F. Supp. 3d at 436 (same).

## ARGUMENT

### I.   Plaintiffs' Damages Claims Are Barred by Sovereign Immunity.

While the Complaint expressly disclaims any RFRA claims against the official capacity Defendants, *see* Sec. Am. Class. Compl. at ¶¶ 42-44 (asserting claims against Defendants in their official-capacities "except with regard to the [RFRA] claims, where [defendants] [are] sued in [their] individual capacity"), and here only the Individual Capacity Defendants are sued in their individual capacities personally for compensatory damages under RFRA, the allegations demonstrate that Plaintiffs' RFRA claim actually challenges official policy and ultimately runs against the federal government, which itself cannot be sued for damages under RFRA. *See Sossamon*, 563 U.S. at 286-88 (interpreting language identical to RFRA in the Religious Land Use and Incarcerated Persons Act). The Supreme Court has long recognized that "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). Litigants cannot make an "end run" around these principles of sovereign immunity merely by naming government officials individually. *Henley v. Simpson*, 527 F. App'x 303, 307 (5th Cir. 2013) (per curiam). As shown below, such a claim cannot stand.

In *Henley*, former highway patrol K-9 officers sued state officials in their individual capacities under the Fair Labor Standards Act (FLSA) and § 1983 to recover overtime wages. 527 F. App'x at 303-04. The court assumed that FLSA, like RFRA, allows individual-capacity

suits against public officials for damages. *Id.* at 306. However, because the plaintiffs asserted that the state's *policy* of requiring them to train and care for their service canines while off duty was unconstitutional, a money judgement against the officials would "'compel the [State]' to revise" its policy. *Id.* at 307 (quoting *Pennhurst*, 465 U.S. at 101 n.11). The court therefore dismissed the plaintiffs' monetary claims and observed that, although sovereign immunity generally does not bar claims against individuals, "application of that rule without context could elevate 'empty formalism' over the principles undergirding sovereign immunity." *Id.* at 308 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)); *see also, e.g., Luder v. Endicott*, 253 F.3d 1020, 1024 (7th Cir. 2001) (dismissing claims where effect of FLSA suit against individual officials was "identical to a suit against the state").

Plaintiffs' individual-capacity claims in this case are analogous to those in *Henley*. As in *Henley*, Plaintiffs' RFRA claims seek money damages from individuals, but challenge official government policies. *See* Sec. Am. Class Compl. at ¶¶ 206-211. If high-ranking officials such as the Individual Capacity Defendants can be sued for damages over official policy decisions with nationwide effects, such individuals could not possibly personally satisfy the judgments. *Cf. Henley*, 527 F. App'x at 307 (indicating that the government would have "no choice" but to indemnify). In addition, this is a purported class action, which may encompass "thousands" more plaintiffs, *see* Sec. Am. Class Compl. at ¶¶ 101, 174, similarly seeking monetary damages from the Individual Capacity Defendants personally. And if Plaintiffs' claims succeed, the certainty of more damages claims arising from the same policies could "compel the [government] to revise" the COVID-19 policies, *id.*, and thus "interfere with the public administration," *Pennhurst*, 465 U.S. at 101 n.11. As courts have recognized in similar circumstances, these effects are "not

hypothetical, but inescapable" consequences of a judgment against the Individual Capacity Defendants personally. *Luder*, 253 F.3d at 1024.

Because Plaintiffs have expressly disclaimed any RFRA claim against the official-capacity Defendants, the Court should not consider the viability of such a hypothetical claim. *See* Sec. Am. Class Compl. at ¶¶ 42-44. Even if the Court wished to do so, however, RFRA damages claims against government officials in their official capacities are barred by sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent"); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) ("RFRA does not waive the federal government's sovereign immunity for damages"); *see also Sossamon*, 563 U.S. at 277 (holding that identical language in the Religious Land Use and Institutionalized Persons Act of 2000 did not effect a waiver of sovereign immunity). Since Plaintiffs' RFRA claim against the Individual Capacity Defendants is actually an attempt to recover from the federal government for damages under RFRA, this Court should dismiss the RFRA claim for lack of jurisdiction.

**II.   The Individual Capacity Defendants are Entitled to Qualified Immunity.**

Plaintiffs' claims warrant dismissal because the Individual Capacity Defendants are entitled to dismissal based on the doctrine of qualified immunity for several reasons. First, Plaintiffs fail to allege a plausible claim for relief, much less allege the personal involvement of the Individual Capacity Defendants. *See Iqbal*, 556 U.S. at 678. Second, even if this Court were to find that Plaintiffs alleged facts sufficient to make out a plausible claim for relief, a dismissal is still warranted as Plaintiffs have failed to allege a substantial burden to their religious exercise that is clearly established.

### A. The qualified immunity framework.

Courts have long recognized that individual capacity damages suits against federal officials give rise to "substantial social costs," particularly "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [government] officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To mitigate these costs, the doctrine of qualified immunity shields government officials from personal liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity thus affords officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). And because qualified immunity is designed to shield officials from the burdens of litigation, it should be resolved "at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Qualified immunity applies not only to constitutional claims, but also to federal statutory claims. *See Harlow*, 457 U.S. at 818. Consequently, the defense is available to defendants sued under RFRA. *See, e.g.*, *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012); *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 813 (10th Cir. 2022); *Fazaga v. FBI*, 965 F.3d 1015, 1061 (9th Cir. 2020), *rev'd and remanded on other grounds*, 595 U.S. 344 (2022); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Potts v. Holt*, 617 F. App'x 148, 150-51 (3d Cir. 2015); *see also Tanzin v. Tanvir*, 141 S. Ct. 486, 492 n.* (2020) (acknowledging that both parties agreed qualified immunity should apply in RFRA cases). Under the two-prong framework for analyzing qualified immunity, officials are shielded from money damages "unless a plaintiff pleads facts showing, (1) that the official violated a statutory or constitutional right, and (2) that the right was

'clearly established' at the time of the challenged conduct." *Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012) (quoting *al-Kidd*, 563 U.S. at 735). Courts have discretion to decide which prong of the analysis to tackle first. *Id.* Once a defendant invokes qualified immunity, it is the plaintiff's burden to demonstrate that the doctrine does not apply. *Palmieri v. United States*, 896 F.3d 579, 586 (D.C. Cir. 2018).

Under the second prong of the analysis, an official is entitled to qualified immunity unless the asserted right was clearly established, which means it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). If "a reasonable officer might not have known *for certain* that the conduct was unlawful" in light of pre-existing law, then he is immune from liability. *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (emphasis added). To overcome an assertion of qualified immunity, the plaintiff must identify "cases of controlling authority" or "a robust consensus of cases of persuasive authority," *Schoonover v. Clay Cnty. Sheriff's Dep't*, No. 20-1680, 2023 WL 4026091, at *4 (4th Cir. June 15, 2023) (quotations and citations omitted), that places the constitutional or statutory question "beyond debate." *Id.*; *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012). "It is not enough that the rule is suggested by then-existing precedent." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* In other words, the right must be beyond debate "not merely 'at a high level of generality' but 'in light of the specific context of the case.'" *Palmieri*, 896 F.3d at 586 (quoting *Hedgpeth v. Rahim*, 893 F.3d 802, 806 (D.C. Cir. 2018)). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 583 U.S. at 63 (quotation omitted). Consistent with this

11

guidance, courts have granted qualified immunity in RFRA cases at the motion to dismiss stage where there was no controlling precedent that would have put the defendant on notice that their conduct violated the statute.[4]

As shown below, Plaintiffs fail both prongs of the qualified immunity test. They fail to plausibly allege that the Individual Capacity Defendants, through their own personal actions, imposed a substantial burden on Plaintiffs' religious exercise, such that an award of money damages against them personally would be "appropriate relief" (prong 1) and they fail to plausibly allege any violation of a clearly established right under RFRA (prong 2).

1. **Plaintiffs have failed to plausibly state a claim for which relief can be granted.**

Under prong one of the qualified immunity analysis, the Court must determine if Plaintiffs have pled sufficient facts to show that an official violated a statutory or constitutional right. *al-Kidd*, 563 U.S. at 735. As an initial matter, the Complaint should be dismissed as it fails to allege *any* facts to create a claim against the Individual Capacity Defendants. Not only have Plaintiffs failed to allege the personal involvement of the Individual Capacity Defendants, but they have also failed to allege the violation of a statutory right—in this case RFRA—as required under prong one of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Even assuming Plaintiffs can overcome prong one of qualified immunity, the Complaint still fails to

---

[4] *See, e.g., Fazaga*, 965 F.3d at 1062 (covert surveillance allegedly conducted on the basis of religion); *Lebron*, 670 F.3d at 557 (application of RFRA to enemy combatants); *Rasul v. Myers*, 563 F.3d 527, 533 n.6 (D.C. Cir. 2009) (application of RFRA to noncitizens detained abroad); *Cooper v. True*, No. 16-cv-02900-MJD-KMM, 2017 WL 6375609, at *1, 6 (D. Minn. Nov. 2, 2017), *report and recommendation adopted,* 2017 WL 6372651 (D. Minn. Dec. 12, 2017) (prison warden's allegedly inadequate request to transfer an inmate to a facility where he could better participate in his faith); *Brown v. Bureau of Prisons*, No. 3:14-cv-681 (RNC), 2017 WL 1234104, at *2 (D. Conn. Mar. 31, 2017) (pat-down search of a Muslim female inmate by a male guard); *Fernandez-Torres v. Watts*, No. 2:16-cv-24, 2017 WL 9485591, at *3 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted,* 2017 WL 1173923 (S.D. Ga. Mar. 29, 2017) (prisoner's request to receive religious items from unapproved vendors).

plead how the COVID-19 policies they allege (namely, masking, travel restrictions, or COVID-19 testing) substantially burdened the free exercise of their religion. As shown herein, the Complaint does not identify a religion or specify a religious belief for anyone other than Plaintiff Thornton. *See* Sec. Am. Class Compl., at ¶¶ 9, 17-40. And even Plaintiff Thornton—who admits he did not submit a request for a religious accommodation and did not formalize his class complaint until after the nationwide injunction enjoined federal agencies from enforcing E.O. 14043 against their own employees—fails to detail how masking, travel restrictions, or COVID-19 testing, substantially burdened the free exercise of his religion. *Id.* at ¶¶ 9-10.

RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the challenged conduct is (1) "in furtherance of a compelling government interest;" and (2) "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. A RFRA analysis begins with determining "whether a substantial burden has been imposed on the exercise of sincerely-held religious beliefs." *Carmichael v. Sebelius*, No. 3:13-cv-129, 2013 WL 5755618, at *6 (E.D. Va. Oct. 23, 2013) (quoting *Goodall by Goodall v. Stafford Cnty. Sch. Bd.,* 60 F.3d 168, 171 (4th Cir. 1995)). *See also Am. Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995) ("The threshold inquiry under RFRA concerns burden. If a statute does not substantially burden a religious practice, then the statute does not implicate RFRA.").

a. **Religious Exercise.**

RFRA's definition of an "exercise of religion" is broad, protecting "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 696 (2014) (quoting § 2000cc–5(7)(A)). But a plaintiff's RFRA allegations may fail if the government's action impacted personal preferences

related to, but distinct from, religious beliefs. *See, e.g., California-Nevada Ann. Conf. of the Methodist Church v. City & Cnty. Of San Francisco*, 74 F. Supp. 3d 1144, 1155-56 (N.D. Cal. 2014) (granting motion to dismiss for failure to state a claim where church's sale of property to third party to fund religious mission "was not, in and of itself, religious exercise as defined by RLUIPA," which courts sometimes look to in interpreting RFRA's substantive standards); *see also Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1286, 1290-91 (11th Cir. 2012) (granting qualified immunity on prong one because record showed plaintiff was terminated for her desire to *tell* same-sex relationship clients she could not counsel them because of her religious beliefs, not for the beliefs themselves); *Guam v. Guerrero*, 290 F.3d 1210, 1223 (9th Cir. 2002) (holding that Guam's controlled substance statute did not pose substantial burden under RFRA because "Rastafarianism does not require *importation* of [marijuana].").

Plaintiffs here fail to connect the alleged violations with any "exercise of religion." Only Plaintiff Thornton references religion at all, and Thornton only alleges that taking the vaccine would violate his beliefs without mentioning any further details such as how or why it would violate his beliefs.[5] At no point does he detail how remaining unmasked, free of COVID-19 testing, or unlimited by travel restrictions relate to the exercise of his religious beliefs. *Id*. at ¶¶ 9-10. Those claims, therefore, fail at the outset because Thornton does not claim any violation of his religion in those respects. This is all information that Plaintiffs must be able to explain and should have alleged in the Complaint. *See cf. United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996) ("It is not enough in order to enjoy the protections of the Religious Freedom Restoration Act to claim the name of a religion as a protective cloak. Neither the government nor

---

[5] The undersigned concedes that individuals may have sincerely held religious beliefs regarding the COVID-19 vaccine; however, those religious beliefs must still be sufficiently pled to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 681, 685.

the court has to accept the defendants' mere say-so."). The failure to allege this information warrants a dismissal.

### b. Substantial Burden.

A substantial burden requires "'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Heap v. Carter*, 112 F. Supp. 3d 402, 421 (E.D. Va. 2015) (quoting *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99-100 (4th Cir. 2013)); *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (same). A substantial burden also exists if a person is forced to "choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." *Carmichael*, 2013 WL 5755618 at *6 (quoting *Smith v. Ozmint,* 578 F.3d 246, 251 (4th Cir. 2009) (internal alterations and citations omitted); *cf. Kaemmerling v. Lappin,* 553 F.3d 669, 678 (D.C. Cir. 2008) ("An inconsequential or *de minimis* burden on religious practice does not rise to this level, nor does a burden on activity unimportant to the adherent's religious scheme."). A bare allegation that government conduct substantially burdens a person's religious exercise is a legal conclusion that is not entitled to an assumption of truth. *Kaemmerling*, 553 F.3d at 679 (upholding Rule 12(b)(6) dismissal of RFRA claim where plaintiff failed to "allege facts sufficient to state a substantial burden on his religious exercise"). Instead, a plaintiff must allege sufficient *facts* from which a court can plausibly conclude that a substantial burden exists. *Id*.

Plaintiffs fail to identify any religious "exercise" that was burdened despite their objections. Plaintiffs do not specify what religious observance was impeded by COVID-19 testing, travel restrictions, or masking policies. They do not detail how masking, testing for COVID-19, or travel restrictions pressured them to perform an act in violation of their religious beliefs. At most, Plaintiffs allege to have received Department wide emails encouraging

employees to obtain the COVID-19 vaccine, *see* Sec. Am. Class Compl. at ¶¶ 57-60, but even those alleged communications fall far short of what would be an actionable substantial burden, which requires proof of substantial pressure to violate one's religious beliefs. *Heap v. Carter*, 112 F. Supp. 3d at 421; *Lovelace*, 472 F.3d at 187.[6] Encouragement, communicated through omnibus Department-wide e-mails, does not satisfy that burden. And Plaintiff Thornton's allegations concerning general religious beliefs, *see* Sec. Am. Class Compl., at ¶¶ 9, 181, fare no better, as they are insufficient to demonstrate that a religious exercise has been substantially burdened for him or for the other Plaintiffs. Plaintiff Thornton fails to allege that the process for seeking a COVID-19 vaccination exemption substantial burdened his religion and neither he nor any of the Plaintiffs adequately explain why merely answering a few questions that are all directly related to whether an individual can show a RFRA claim could substantially burden his, or anyone's, religion. *Id.* at 66-67. Even Plaintiff Thornton's complaint that the process for seeking a COVID-19 vaccination exemption became more burdensome than it was before or in other contexts does not itself show a RFRA substantial burden. *See Liberty Univ.*, 733 F.3d at 100; *Godbey v. Wilson*, No. 1:12-cv-1302 (TSE/TRJ), 2014 WL 794274, at \*9 (E.D. Va. Feb. 26, 2014). Lastly, Thornton's allegations also fail to establish a substantial burden on his religion because he never requested an accommodation. *See Murphy v. Collier*, 139 S. Ct. 1475, 1484 (2019) (Alito, Thomas, Gorsuch, dissenting from grant of application of a stay) (suggesting there is no substantial burden where a claimant has alternative ways to satisfy his or her religious beliefs).

---

[6] It is also noteworthy that Plaintiffs never claim the Individual Capacity Defendants sent the alleged emails.

Accordingly, Plaintiffs have not alleged a plausible claim that the policy substantially burdens plaintiffs' free exercise of religion. *See Heap*, 112 F. Supp. 3d at 422 (dismissing plaintiff's RFRA claim where he failed to demonstrate that being a Navy chaplain was part of the core belief system of Humanism); *Liberty Univ.*, 733 F.3d at 100 (finding dismissal appropriate where plaintiff made no plausible claim that the Act substantially burdened their exercise of religion, by forcing them to facilitate or support abortion or otherwise); *Godbey*, 2014 WL 794274 at *9 (finding plaintiff failed to state a claim for relief under RFRA where there was insufficient evidence of a substantial burden to his religious exercise). As they are unable to show a "substantial burden" on their religious exercise, Plaintiffs have failed to adequately plead a RFRA claim. *Kaemmerling*, 553 F.3d at 677. They have failed to allege any burden, much less a substantial burden, to their religious exercise. At best, Plaintiffs have outlined minor inconveniences to their unalleged personal preferences but that alone is insufficient to create a RFRA violation; thus, a dismissal is warranted.

## 2. Plaintiffs do not allege the Individual Capacity Defendants were personally involved in violating their rights.

Even if this Court were to find the Complaint plausibly alleges a claim under RFRA, dismissal is still warranted under prong one of qualified immunity because Plaintiffs fail to allege the Individual Capacity Defendants were personally involved in violating their rights. Under prong one of the qualified immunity analysis, courts must analyze not just whether the allegations make out a violation, but also whether the individual official was personally involved in the alleged violation. *See Saucier*, 533 U.S. at 201 (assessing whether "the facts alleged show the *officer's conduct* violated a constitutional right" (emphasis added)). This is because a government official "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (plaintiff asserting § 1983 claim

"must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution'" (quoting *Iqbal*, 556 U.S. at 676)). This is not a unique approach.

In *Iqbal*, the plaintiff claimed he was deprived of various constitutional protections while in federal custody. His complaint against numerous high-level federal officials, including the former Attorney General of the United States John Ashcroft and the former Director of the Federal Bureau of Investigation Robert Mueller, alleged these officials adopted an unconstitutional policy that subjected him to harsh conditions of confinement on account of his race, religion, or national origin. The Supreme Court disagreed when it found that plaintiff failed to "nudge[] [his] claims . . . across the line from conceivable to plausible," as it included nothing but "bare assertions," specifically noting the Complaint lacked "factual allegations against" the individual defendants other than accusing them of "adopting a policy." *Iqbal*, 556 U.S. at 683.

Similar to *Iqbal*, Plaintiffs in this case failed to plead factual content that would allow this Court to draw the reasonable inference that the Individual Capacity Defendants are liable for the misconduct alleged. The allegations against the Individual Capacity Defendants are even less precise than those in *Iqbal*. Plaintiffs fail to indicate what role the Individual Capacity Defendants played in promulgating, effectuating, or enforcing the alleged policy of masking, COVID-19 testing, or travel restrictions. *See cf*. *Jordan v. Davis*, No. 22-cv-1541-ELH, 2023 WL 2478862, at * 13 (D. Md. Mar. 13, 2023) ("Liability does not attach merely because of defendants' positions or titles. Yet, that is clearly the basis of plaintiff's claims."). Simply put, Plaintiffs have failed to allege any facts demonstrating that the Individual Capacity Defendants had even "mere knowledge" of the alleged RFRA violations, *cf. id*., let alone that they were indifferent to or tacitly approved it. Instead, like in *Iqbal*, Plaintiffs bring this suit against high-

level federal officials without any factual basis or personal conduct connecting them to the alleged violations. Plaintiffs "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim against the Individual Capacity Defendants. *See Iqbal*, 556 U.S. at 678, 685.

Numerous courts have applied this principle in the RFRA context, requiring the plaintiff to plead facts plausibly showing that each individual defendant was personally involved in the conduct that is alleged to have imposed a substantial burden on religious exercise. *See Bundy v. Sessions*, 812 F. App'x 1, 2 (D.C. Cir. 2020) (unpublished) (requiring plaintiff to plausibly allege each defendant's personal participation in authorizing raid, arrest, and prosecution in order to state a RFRA claim, "[p]ure vicarious liability . . . is [also] not sufficient to state a claim under RFRA" (quoting *Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 55 (D.D.C. 2015))); *see also Zirpolo v. Williams*, No. 19-cv-2024-WJM-KMT, 2020 WL 3104078, at *4 (D. Colo. June 11, 2020) (dismissing RFRA claim where plaintiffs failed to allege that any "Defendant, personally, had anything to do with Plaintiffs being unable to access" religious video), *aff'd sub nom. Colorado Springs Fellowship Church v. Harper*, No. 21-1269, 2022 WL 2118440, at *2 (10th Cir. June 13, 2022); *Davis v. Fed. Bureau of Prisons*, No. 15-cv-0884-WJM-MJW, 2017 WL 11504857, at *8 (D. Colo. Apr. 7, 2017) (dismissing RFRA claim for failure to allege "how each named defendant was personally involved" in refusing religious services), *aff'd*, 798 F. App'x 274 (10th Cir. 2020); *White v. Sherrod*, No. 07-cv-821-MJR, 2009 WL 196332, at *2 (S.D. Ill. Jan. 28, 2009) (inmate failed to state RFRA claim against warden based on allegedly being prevented from "say[ing] whatever he wishe[d] to say within the context of religious services," because the warden "was not the individual who prevented him from speaking at these services"); *Curry v. Gonzales*, No. 07-cv-0199 (JR), 2007 WL 3275298, at *1 (D.D.C. Nov. 6,

2007) (dismissing RFRA and *Bivens* claims where plaintiff failed to allege that "high-level officials were personally and directly involved in the misdeed"). While the pleaded facts must be viewed in the light most favorable to the plaintiff, a court "need not strain to find inferences supporting non-movant's position," *Lindsay v. Public Service Co. of N.C.*, No. 90-2358, 1991 WL 16135 at *3 (4th Cir. Feb. 13, 1991) (citing *Kim v. Coppin State Coll.*, 662 F.2d 1055, 1059 (4th Cir. 1981)), nor "accept conclusory allegations," *Brooks v. Chapman*, No. 1:22-cv-305 (LMB/JFA), 2022 WL 17852779, at *3 (E.D. Va. Dec. 22, 2022), or "unwarranted deductions," *Moseley v. Price*, 300 F. Supp. 2d 389, 395 (E.D. Va. 2004).

A review of the Complaint shows Plaintiffs failed to establish that any of the Individual Capacity Defendants personally participated in a violation of any aspect of Plaintiffs' religious practices. Instead, the alleged RFRA violation against the Individual Capacity Defendants is based entirely on the claim that "the Department . . . burdened the[ir] exercise of religion." *See* Sec. Am. Class Compl., at ¶ 207. This burden was allegedly imposed by "forcing religious believers to accept invasive and painful testing," as well as "stigmatizing masking." *Id.* Plaintiffs allege to have lost professional opportunities and experienced a "culture of harassment and ridicule because of their disfavored religious beliefs." *Id.* Notably missing from these allegations, however, is any claim that the Individual Capacity Defendants were personally involved in any purported "culture of harassment" or "forc[ed] religious believers to accept invasive and painful testing." *Id.* Not one of the Plaintiffs allege they complained to the Individual Capacity Defendants about their requests for accommodation, that they took any action regarding their requests, or that they were personally involved in rejecting their requests. Plaintiffs fail to even allege the Individual Capacity Defendants were aware of their requests or the alleged discrimination to which Plaintiffs were subjected, and never allege they made the Individual

Capacity Defendants aware of the burden imposed on the exercise of their religion. In fact, Plaintiffs refer to several other individuals who allegedly issued notices "strongly encourag[ing] all employees and eligible family members to receive booster shots," *see id*. at ¶ 57a, "issued an email . . . encourage[ing] all employees to receive booster shots," *id*. at ¶ 57b, "berated" and "verbally ridiculed" them, *see id*., at ¶ 83d, "bullied and badgered [them] in official communications," *id*., at ¶ 83c, "ordered" them to put their "mask on immediately,' *id*., at ¶ 83e, and "subjected them to constant commentary . . . disparaging and vilifying" them *id*., at ¶ 83a. But Plaintiffs never once claim those actions were committed by the Individual Capacity Defendants or that the Individual Capacity Defendants ever knew about those alleged incidents. Apart from a single, boilerplate allegation of a purely supervisory nature identifying each Individual Capacity Defendant, *id.* at ¶¶ 42-44, the Complaint is devoid of any allegations identifying their conduct, let alone claiming they personally took specific action to deny Plaintiffs the right to exercise their religion. The Complaint solely refers to the "Department" as the only entity that acted, not the Individual Capacity Defendants. *Id*. at ¶ 207. Such allegations do not overcome qualified immunity.

Essentially, Plaintiffs are asking this Court to hold the Individual Capacity Defendants personally liable for money damages for violating their religious beliefs, based on the Individual Capacity Defendants' purported inability to perceive that following the implementation of a government-wide COVID-19 policy, these Plaintiffs would be subjected to ridicule or discrimination for subsequently requesting religious accommodations to that policy. However, an award of money damages against an individual in their personal capacity for their failure to speculate such responses is inappropriate. Arguably, even if the Individual Capacity Defendants could have guessed the responses—which is not at all alleged or conceded—an award of money

damages against an individual in his or her personal capacity under those circumstances would

not be "appropriate relief," 42 U.S.C. § 2000bb-1(c), if the individual was not personally

involved in the conduct that allegedly violated the statute. Money damages from an individual

official is inappropriate if that official did not have knowledge their conduct would impose a

substantial religious burden. Because Plaintiffs have not plausibly alleged the Individual

Capacity Defendants personally participated in the alleged unlawful conduct, they are entitled to

qualified immunity.

### 3. Plaintiffs fail to plausibly allege the violation of a clearly established right under RFRA.

The Individual Capacity Defendants are further entitled to qualified immunity under

prong two because it was not clearly established that their limited conduct—overseeing a federal

agency that implemented a government-wide COVID-19 protocol during a worldwide

pandemic—violated RFRA.[7] A government official violates RFRA when his conduct

---

[7] To the extent Plaintiffs argue it was clearly established that the COVID-19 vaccine mandate violated RFRA, the backdrop of relevant precedent upholding compulsory vaccination demonstrates a lack of "fair warning" that said conduct was unlawful. *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Well over a century ago, the Supreme Court in *Jacobson v. Massachusetts* upheld a law mandating vaccination against smallpox on the basis that it did not "invade[] any right secured by the Federal Constitution." 197 U.S. 11, 38 (1905); *see also, e.g., Zucht v. King*, 260 U.S. 174, 176 (1922) ("[I]t is within the police power of a state to provide for compulsory vaccination."). And the Supreme Court has also observed that "[t]he right to practice religion freely does not include liberty to expose the community . . . to communicable disease." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944). Citing these and other cases, the D.C. Circuit has stated that "adults, sick or well, can be required to submit to compulsory treatment or prophylaxis, at least for contagious diseases" and that "there are no religious exemptions from these orders." *Application of President & Directors of Georgetown Coll., Inc.*, 331 F.2d 1000, 1008 (D.C. Cir. 1964) (granting emergency writ to forcibly administer emergency blood transfusion to patient who would not consent on religious grounds). Lastly, to the extent Plaintiffs attempt to use recent Court decisions surrounding the COVID-19 vaccine to allege the violation of clearly established right under RFRA, such an argument must fail as "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were

"substantially burden[s] a person's exercise of religion" and is not the "the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb–1.

The Individual Capacity Defendants are unaware of any controlling or uniform precedent addressing RFRA in the context of travel restrictions, COVID-19 testing, or masking during a global pandemic. The Individual Capacity Defendants are also unaware of any statute or controlling case where it was found that a person's religious exercise was burdened by being compelled to wear a mask or submit to a testing process as a condition of a vaccination exemption. This is sufficient on its own to warrant qualified immunity as the lack of any controlling precedent is a most compelling indication that Plaintiffs' claims are not, and cannot be, based on clearly established law. *See Palmieri*, 896 F.3d at 586. Even assuming Plaintiffs have sufficiently alleged a sincerely held religious belief, based on the facts in the Complaint, a reasonable person in the same position as the Individual Capacity Defendants might not have "known for certain," *Abbasi*, 582 U.S. at 152, that their alleged conduct—overseeing a federal agency that implemented a COVID-19 protocol—would substantially burden Plaintiffs' exercise of their religion.

Given the paucity of controlling case law regarding compulsory masking or COVID-19 testing during a global pandemic, it was not "beyond debate," *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (quoting *Reichle*, 566 U.S. at 664), that implementing safety policies like masking, COVID-19 testing, or quarantine/travel restrictions violated RFRA. Accordingly, the Individual Capacity Defendants are entitled to qualified immunity because no reasonable official

---

'clearly established' at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson*, 483 U.S. at 639).

in their position would have known, much less "known for certain," *Abbasi*, 582 U.S. at 152, that

overseeing an agency that implemented agency-wide safety policies was unlawful.

### III.   Plaintiffs' Allegations Do Not Support the Availability of Damages Against High-Ranking Federal Officials as "Appropriate Relief" Under RFRA.

Plaintiffs' RFRA claims against the Individual Capacity Defendants warrant dismissal

because they arise in an unprecedented context—high-ranking federal officials responding to a

global pandemic—for which personal damages are not "appropriate relief." Although the

Supreme Court resolved the question of whether monetary damages *can generally* be an

appropriate remedy for an individual capacity RFRA claim, *Tanvir*, 141 S. Ct. 486, that does not

mean they *are necessarily* appropriate in every RFRA case or context. Rather, *Tanvir* considered

whether RFRA's express remedies provision, which allows plaintiffs to "obtain appropriate relief

against a government," § 2000bb–1(c), "encompasses money damages against officials." 141 S.

Ct. at 489. In determining that it did, the Supreme Court was careful to limit its holding,

specifically stating that RFRA "permits litigants, *when appropriate*, to obtain money damages

against federal officials in their individual capacities." *Id.* at 493 (emphasis added). Courts,

therefore, must assess the appropriateness of damages under RFRA on a claim-by-claim basis.

The term "'appropriate' may well take on different meanings in different settings,"

*Tanvir v. Tanzin*, 894 F.3d 449, 466 (2d Cir. 2018), *aff'd*, 141 S. Ct. 486, and thus what

constitutes "appropriate relief" is "inherently context dependent," *Tanvir*, 141 S. Ct. at 491

(quoting *Sossamon*, 563 U.S. at 286). Fundamentally, the question is whether damages would be

"[s]pecially fitted or suitable, proper" in the context of the particular claim before the court. *Id.*

(quoting 1 Oxford English Dictionary, at 586). Plaintiffs' RFRA claim differs significantly from

those in *Tanvir* and does not support the appropriateness of damages.

24

Plaintiffs' attempt to hold the Individual Capacity Defendants responsible for a nationwide policy during a global pandemic is inappropriate. Plaintiffs' RFRA claim against the Individual Capacity Defendants triggers the deepest concerns underlying judicial reluctance to impose damages—limiting government response to a global public health crisis that could have national, and international, security implications. Precedent from other contexts underscores that authorizing damages claims against high-level officials personally for establishing policies to address a national crisis like COVID-19 would be inappropriate. In the context of *Bivens* claims—the only means of suing federal officials personally under the Constitution—the Supreme Court made clear in *Ziglar v. Abbasi* that awarding damages on the basis of policymaking is not appropriate, especially where the policies in question concerned "major elements of the Government's whole response to the September 11 attacks." *See* 582 U.S. 120, 142 (2017). The Court explained that allowing such claims against officials "would call into question the formulation and implementation of a general policy," *id.* at 1060, and that "the burden and demand of litigation might well prevent [officials] from devoting the time and effort required for the proper discharge of their duties." *Id.* (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 382 (2004)). Granted, *Abbasi* and other *Bivens* cases are implied and not statutory causes of action; but in this context the judicial assessment of when and whether damages are "appropriate relief" under RFRA involves precisely the same common law considerations that courts look to when assessing implied rights of action.

The reticence to extend liability for policymaking, particularly in times of crisis, is apparent in other contexts too. For instance, the Fifth Circuit has interpreted the "discretionary function exception" in the FTCA to preclude government liability for policy decisions responding to a natural disaster. *See, e.g., Freeman v. United States*, 556 F.3d 326, 340-41 (5th

25

Cir. 2009) (rejecting claim alleging negligent federal response to Hurricane Katrina); *Spotts v. United States*, 613 F.3d 559, 572-73 (5th Cir. 2010) (rejecting claim based on decision not to evacuate high-security prisoners after hurricane). And as the Second Circuit has explained, Congress has also legislated to prevent "judicial second-guessing" in the context of "disaster relief efforts" by adding a similar exception to the Stafford Act, which governs federal disaster response. *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 192 (2d Cir. 2008) (interpreting Section 305 of the Stafford Act, 42 U.S.C. § 5148); *see also Benzman v. Whitman*, 523 F.3d 119, 126 (2d Cir. 2008) (concluding that "a suit against a federal official for decisions made as part of federal disaster response and cleanup efforts implicate the sort of 'special factors' that counsel against creation of a *Bivens* remedy").

These decisions stand for a principle that is relevant here: damages are not appropriate in the context of federal policymaking in response to a national crisis. It is well-documented that COVID-19 has been a significant cause of illness and death, not only in this country, but globally. *See* HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx; *see also* Prabhat Jha, Patrick E. Brown & Rashid Ansumana, *Counting the global COVID-19 dead*, Lancet, May 6, 2022, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9075854/. *See United States v. Horton*, No. 19-cr-115-ELH, 2023 WL 3390910, at *9 (D. Md. May 10, 2023) (quoting *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part, dismissed in part*, No. 20-2311, 2022 WL 1449180 (4th Cir. May 9, 2022) (noting that "COVID-19 spawned 'a public health crisis more severe than any seen for a hundred years'")).

Plaintiffs admit that, during the time their allegations arose, some of them were stationed outside the United States or working with people from various countries. *See* Sec. Am. Class

Compl., at ¶¶ 57d, 83f. One Plaintiff alleges she was forced to "quarantine upon her arrival at a new duty station." *Id*. at ¶ 83f. Some allege they were "deprived of the ability to travel." *Id*. at ¶ 74. Here, the protection of citizens within the nation and abroad, along with the international security implications that occur during a global pandemic, as well as the COVID-19 restrictions implemented by other countries, should cause this Court to hesitate in deeming money damages appropriate against individual capacity defendants. To award any money damages in this case is to second guess a government's attempt to protect its people and the citizens of other countries from an unprecedented crisis, as well as our country's international relationships. While not specifically commenting on RFRA claims, the Supreme Court in *Abbasi* still counsels us to consider the burdens and costs associated with "establish[ing] whole categories of cases in which federal officers must defend against personal liability claims." 582 U.S. at 136.

All these aspects of Plaintiffs' RFRA claim make damages inappropriate here. Any other construction would make the Individual Capacity Defendants personally liable, not only to the 19 Plaintiffs asserting a RFRA claim, but theoretically to all the others who were subject to COVID-19 policies, or who were asked to quarantine post-travel, or who were simply asked to wear a mask. Indeed, if *Tanvir*'s statement that litigants may only recover individual capacity damages under RFRA "when appropriate" means anything, it warrants not extending damages relief to a claim like the cause of action presented by Plaintiffs, and others similarly situated, against high-ranking federal employees. *See* 141 S. Ct. at 493.

## CONCLUSION

For the reasons stated above, the Individual Capacity Defendants respectfully request the

Court grant this Motion and dismiss them from the case, with prejudice.

Dated: September 20, 2023          Respectfully submitted,

JESSICA D. ABER
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

JAMES G. BARTOLOTTO
Senior Trial Counsel, Torts Branch

*/s/Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant U.S. Attorney
Virginia Bar No. 93902
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3752
Fax: (703) 299-3983
Email: lauren.wetzler@usdoj.gov

*/s/ Chibogu Nneka Nzekwu*
CHIBOGU NNEKA NZEKWU
Trial Attorney
New York Reg. No. 5515994
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4325
Fax: (202) 616-4314
E-mail: chibogu.n.nzekwu@usdoj.gov

*Attorneys for Antony Blinken, Marcia Bernicat, and
Carol Perez in their Individual Capacities*

28