**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MARCUS THORNTON, *et al.*,

               *Plaintiffs,*

     v.

ANTONY J. BLINKEN, in his official
capacity as Secretary of the U.S. Department
of State and in his individual capacity, *et al.*,

               *Defendants.*

Civil Action No. 1:23-cv-0266-PTG-IDD

**MEMORANDUM IN SUPPORT OF
OFFICIAL-CAPACITY DEFENDANTS' MOTION TO DISMISS**

## <u>CONTENTS</u>

<u>INTRODUCTION</u> ..................................................................................................... 1

<u>BACKGROUND</u> .................................................................................................... 3

I.    Plaintiffs' Objections to the Federal Employee Vaccination Requirement. ...................... 3

II.   Administrative Proceedings. ........................................................................ 5

III.  This Litigation. ......................................................................................... 7

<u>LEGAL STANDARDS</u> ........................................................................................... 7

<u>ARGUMENT</u> ......................................................................................................... 8

I.    ALL OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS BLINKEN, PEREZ, AND BERNICAT SHOULD BE DISMISSED. .................................................. 8

II.   THE REHABILITATION ACT CLAIM SHOULD BE DISMISSED. ............................ 9

     A.    Plaintiffs' Perceived Disability Claim Fails. ........................................ 10

     B.    Plaintiffs' Alleged Disability Claims Fail. ........................................... 12

          1.    Disparate treatment. ............................................................... 13

          2.    Failure to accommodate disability. .............................................. 16

III.  PLAINTIFFS' TITLE VII CLAIMS SHOULD BE DISMISSED. ................................. 19

     A.    Plaintiffs' Title VII Claims Are Limited by Exhaustion Requirements. .............. 19

     B.    Plaintiffs Fail to Allege an Unlawful Denial of Religious Accommodation. ....... 21

          1.    Plaintiffs were not disciplined for failure to comply. .............................. 22

          2.    Defendants provided a reasonable accommodation. ................................. 25

     C.    Plaintiffs Fail to Allege Adverse Action Motivated by Religious Animus for Their Disparate Treatment Claim. ..................................................... 26

IV.  PLAINTIFFS' CLASS ACTION CLAIMS SHOULD BE DISMISSED. ...................... 30

<u>CONCLUSION</u> ..................................................................................................... 31

# AUTHORITIES

**Cases**

*Adams v. Trustees of the Univ. of N.C.-Wilmington,*
    640 F.3d 550 (4th Cir. 2011) ......................................................... 26, 27

*Alexander v. City of Greensboro,*
    762 F. Supp. 2d 764 (M.D.N.C. 2011) ...................................................... 9

*Ansonia Bd. of Educ. v. Philbrook,*
    479 U.S. 60 (1986) .............................................................. 22, 23, 26

*Antietam Battlefield KOA v. Hogan,*
    461 F. Supp. 3d 214 (D. Md. 2020) ......................................................... 3, 4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................... 8

*Baird v. Rose,*
    192 F.3d 462 (4th Cir.1999) ............................................................ 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................... 8

*Bezzina v. United Airlines, Inc.,*
    2022 WL 878921 (C.D. Cal. Feb. 24, 2022) ........................................... 29

*Boone v. Goldin,*
    178 F.3d 253 (4th Cir. 1999) .......................................................... 28

*Burcham v. City of Los Angeles,*
    562 F. Supp. 3d 694 (C.D. Cal. 2022) .............................................. 25, 29

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006) ............................................................. 14, 15, 28

*Chalmers v. Tulon Co. of Richmond,*
    101 F.3d 1012 (4th Cir. 1996) ........................................................ 22

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................. 14, 24

*County of Dorchester v. AT&T Corp.,*
    407 F. Supp. 3d 561 (D.S.C. 2019) ................................................... 30

*EEOC v. Arlington Transit Mix, Inc.*
    957 F.2d 219 (6th Cir. 1991) ......................................................... 24

*EEOC v. Consol. Energy, Inc.*
    860 F.3d 131 (4th Cir. 2017) ................................................ 14, 21, 22, 23

*EEOC v. Firestone Fibers & Textiles Co.*
  515 F.3d 307 (4th Cir. 2008) ........................................................ 22, 26

*EEOC v. Robert Bosch Corp.*
  169 F. App'x 942 (6th Cir. 2006) ................................................ 24

*Eye Care Ctr. of New Jersey, PA v. Twin City Fire Ins. Co.*,
  522 F. Supp. 3d 72 (D.N.J. 2021) ................................................ 30

*Feds for Med. Freedom v. Biden*,
  581 F. Supp. 3d 826 (S.D. Tex.), *vacated and remanded*, 30 F.4th 503 (5th Cir. 2022), *reh'g
  en banc granted, opinion vacated*, 37 F.4th 1093 (5th Cir. 2022), *aff'd on reh'g en banc*, 63
  F.4th 366 (5th Cir. 2023) ............................................... 5, 21, 23, 24

*Finkbeiner v. Geisinger Clinic*,
  623 F. Supp. 3d 458 (M.D. Pa. 2022) ...................................... 25, 26, 29

*Gallo v. Wash. Nat'ls Baseball Club*,
  No. 22-cv-1092, 2023 WL 2455678 (D.D.C. Mar. 10, 2023) ............................ 11

*Gardner v. Mabus*,
  No. 2:14CV352, 2014 WL 11512862 (E.D. Va. Dec. 23, 2014) ......................... 16

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ........................................................ 4

*Groff v. DeJoy*,
  No. 22-174, 2023 WL 4239256 (U.S. June 29, 2023) .................................. 22, 26

*Hall v. Virginia*,
  385 F.3d 421 (4th Cir. 2004) ........................................................ 4, 5

*Hannah P. v. Coats*,
  916 F.3d 327 (4th Cir. 2019) ................................................ 14, 16, 17

*Hice v. Mazzella Lifting Techs., Inc.*,
  589 F. Supp. 3d 539 (E.D. Va. 2022) .......................................... 11, 12

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
  452 U.S. 264 (1981) ................................................................ 10

*Holland v. Wash. Homes, Inc.*,
  487 F.3d 208 (4th Cir. 2007) ................................................ 14, 27

*Isse v. Am. Univ.*,
  540 F. Supp. 2d 9 (D.D.C. 2008) .................................................. 23

*James v. Booz-Allen & Hamilton. Inc.*,
  368 F.3d 371 (4th Cir. 2004) ...................................................... 27

*Johnson v. Bunny Bread Co.*,
   646 F.2d 1250 (8th Cir. 1981) ............................................. 15

*Johnson v. Shalala*,
   991 F.2d 126 (4th Cir. 1993) ............................................. 15

*Jorgenson v. Conduent Transp. Sols., Inc.*,
   No. 22-cv-01648, 2023 WL 1472022 (D. Md. Feb. 2, 2023) ................................. 11

*Kelly v. Town of Abingdon*,
   558 F. Supp. 3d 289 (W.D. Va. 2021) ................................... 14

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ................................................ 9

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) ........................................ 7, 8

*Kirkland v. Mabus*,
   206 F. Supp. 3d 1073 (E.D. Va. 2016) ................................ 12, 13

*Koessel v. Sublette Cnty. Sheriff's Dep't*,
   717 F.3d 736 (10th Cir. 2013) ...................................... 16, 17

*Laird v. Fairfax Cnty.*,
   978 F.3d 887 (4th Cir. 2020) ........................................ 14

*Leake v. Raytheon Techs. Corp.*,
   No. CV-22-00436-TUC-RM, 2023 WL 2242857 (D. Ariz. Feb. 27, 2023) ........................ 29

*Leggo v. M.C. Dean, Inc.*,
   No. 22-cv-374, 2023 WL 1822383 (E.D. Va. Feb. 7, 2023) ................. 12, 15, 28

*Love-Lane v. Martin*,
   355 F.3d 766 (4th Cir. 2004) ......................................... 9

*Lundstrom v. Contra Costa Health Services*,
   2022 WL 17330842 (N.D. Cal. Nov. 29, 2022) ........................... 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................. 7

*McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*,
   780 F.3d 582 (4th Cir. 2015) ...................................... 28, 29

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ................................................ 26

*Monell v. New York City Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ................................................. 9

*Mowery v. Nat'l Geospatial-Intelligence Agency*,
  42 F.4th 428 (4th Cir. 2022) ..................................................... 8

*Pappas v. District of Columbia*,
  513 F. Supp. 3d 64 (D.D.C. 2021) ............................................ 18

*Perkins v. Int'l Paper Co.*,
  936 F.3d 196 (4th Cir. 2019) .................................................... 27

*Pettis v. Nottoway Cnty. Sch. Bd.*,
  No. 3:12-CV-864-HEH, 2013 WL 3063704 (E.D. Va. June 17, 2013) ............................ 9, 10

*Rosenfield v. Wilkins*,
  468 F. Supp. 2d 806 (W.D. Va. 2006) ....................................... 30

*Shane v. Bio-Techne Corp.*,
  No. CV 22-3039 (JWB/ECW), 2023 WL 3936638 (D. Minn. June 9, 2023) ................. 28, 29

*Shklyar v. Carboline Co.*,
  No. 22-cv-391, 2022 WL 2867073 (E.D. Mo. July 21, 2022) ............................... 11

*Simchick v. Fairfax Cnty. Sch. Bd.*,
  No. 1:05cv1476, 2006 WL 721372 (E.D. Va. Mar. 20, 2006) ................................ 9

*Smith v. First Union Nat'l Bank*,
  202 F.3d 234 (4th Cir. 2000) .................................................... 20

*Sowers v. Bassett Furniture Indus.*,
  No. 4:19-CV-39, 2021 WL 276169 (W.D. Va. Jan. 27, 2021) ............................ 25

*Thompson v. City of Tualatin*,
  No. 21-cv-1587, 2022 WL 742682 (D. Or. Mar. 11, 2022) ................................ 11

*Trans World Airlines v. Hardison*,
  432 U.S. 63 (1977) ................................................................ 22

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
  498 F. Supp. 3d 878 (S.D.W. Va. 2020) ..................................... 30

*Wilkinson v. Rumsfeld*,
  100 Fed. App'x 155 (4th Cir. 2004) .......................................... 12

*Williams v. Mancom, Inc.*,
  323 F. Supp. 2d 693 (E.D. Va. 2004) ........................................ 20

*Works v. Colvin*,
  93 F. Supp. 3d 405 (D. Md. 2015) ...................................... 17, 18

*Zimmerman v. HBO Affiliate Grp.*,
  834 F.2d 1163 (3d Cir. 1987) .................................................. 30

**Statutes**

29 U.S.C. § 791 ................................................................................................ 1, 14

42 U.S.C. § 2000e-2 .............................................................................................. 26

42 U.S.C. § 2000e-16 ........................................................................... 2, 3, 19, 21

42 U.S.C. § 12102 ................................................................................................. 11

**Rules**

Federal Rule of Civil Procedure 12 ............................................................. 1, 8, 18

**Regulations**

29 C.F.R. § 1614.103 ............................................................................................ 12

29 C.F.R. § 1614.105 ............................................................................................ 19

86 Fed. Reg. 50,989 (Sept. 9, 2021) ...................................................................... 3

88 Fed. Reg. 30,891 (May 9, 2023) ........................................................................ 5

**Other Authorities**

*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*,
   https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (May 15, 2023) ............................................................... 25

# **INTRODUCTION**

Plaintiffs—a proposed class including 25 current or former United States Department of State ("the Department") employees—filed suit against official capacity Defendants Secretary of State Antony J. Blinken, Director General of the Foreign Service Marcia Bernicat, former Director General of the Foreign Service Carol Perez, and the Department, alleging that Defendants unlawfully discriminated against them on the basis of their religion or disability status through its processes requiring and encouraging all Department employees to be vaccinated against COVID-19 or to request a reasonable medical or religious accommodation.  Plaintiffs further alleged that the official capacity Defendants failed to accommodate Plaintiffs' medical and religious objections to the now defunct vaccination requirement.  As the Second Amended Class Complaint ("the Complaint") makes clear, however, many Plaintiffs never requested accommodations to the vaccination requirement or exhausted their claims in the first place.  And even as to those who did, Plaintiffs concede that "[t]he Department never explicitly denied Plaintiffs' requests," but instead permitted them to wear a mask, test for COVID-19, avoid travel, and socially distance in lieu of vaccination even while their requests were being adjudicated—thereby providing a reasonable accommodation as the law requires.  Am. Compl. ¶ 73, ECF No. 41.  The Complaint falls far short of plausibly showing that the Department's adherence to commonsense medical precautions designed to mitigate the spread of an infectious disease constituted adverse employment actions motivated by Plaintiffs' religion or disability status.  Plaintiffs' dissatisfaction with the Department's universally applicable precautions and reasonable accommodations does not transform those measures into unlawful discrimination.

Plaintiffs bring three claims against the official capacity Defendants.  First, in Count 1, they assert several claims under the Rehabilitation Act of 1973,  29 U.S.C. § 791, alleging that: (i) the Department's COVID-19 policies unlawfully treated all unvaccinated employees as if they

were "regarded as" having a disability; (ii) the Department subjected Maria Ballerini-Hougnon and other unnamed employees to disparate treatment based on their actual disabilities; and (iii) the Department failed to accommodate Ms. Ballerini-Hougnon and other disabled employees' medical objections to the vaccine requirement.  Second, in Counts 2 and 3, Plaintiffs allege that the Department failed to accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964 (Count 2), 42 U.S.C. § 2000e-16, and allege a separate Title VII claim of disparate treatment based on religion stemming from the Department's generally applicable COVID-19 policies (Count 3).  All three counts fall short and should be dismissed.[1]

As a threshold matter, Plaintiffs have only exhausted the discrete subset of claims contained in putative class representative Marcus Thornton's failed EEO class complaint.  Therefore, only those claims raised by Mr. Thornton before the agency may now be considered by the Court.  But even if one pieces together Title VII and Rehabilitation Act claims for Plaintiffs by reference to the limited set of allegations they have properly exhausted, these claims are subject to dismissal because Plaintiffs fail to plead facts sufficient to give rise to a plausible inference that the Department's reasonable accommodations amounted to an adverse employment action, or that the Department acted with a discriminatory motive when it treated all unvaccinated employees alike in its vaccination and accommodation policies—regardless of religion or disability status.

Plaintiffs do not even attempt to state a claim under the Rehabilitation Act or Title VII or allege any injury fairly traceable to the actions of Defendants for the vast majority of employees identified in the Complaint.  No Plaintiff alleges a specific religious faith or otherwise explains

---

[1] Plaintiffs also claim that Defendants Blinken, Perez, and Bernicat violated their rights under the Religious Freedom Restoration Act ("RFRA"), acting in their individual capacities. Am. Compl. ¶¶ 206-211.  Plaintiffs' RFRA claim is asserted against Defendants Blinken, Perez, and Bernicat in their individual capacities only, *id.* ¶¶ 42-44, as counsel for Plaintiffs confirmed during a telephone call with counsel for the official and individual capacity Defendants on August 21, 2023.

how that faith forms the basis for a Title VII claim against the Government except Mr. Thornton. Likewise, only Ms. Ballerini-Hougnon and Ms. Benabdi allege that they have any kind of disability that could possibly form the basis of a Rehabilitation Act claim, since being unvaccinated does not as a matter of law make a person regarded as having a disability within the meaning of the disability-rights law.  But even as to these individuals, Plaintiffs admit that "the Department never explicitly denied Plaintiffs' requests" for accommodation, *id.* ¶ 73, and fail to plausibly allege that the Department's commonsense COVID policies for unvaccinated employees constitute adverse employment actions taken *because of* Plaintiffs' religion or disability status.  In fact, Plaintiffs allege exactly the opposite.  *Id.* ¶ 165 (alleging that "anyone who did not accept the vaccine" was subject to "testing / screening procedures"—not just disabled or religious individuals alone).

Absent any plausible allegation that Defendants denied Plaintiffs' accommodation requests and subsequently disciplined them for failure to comply with a conflicting employment requirement, Plaintiffs' failure to accommodate claims must be dismissed for failure to state a claim.  Likewise, because Plaintiffs fail to identify adverse employment actions and allege sufficient facts to plausibly show that their employer acted with discriminatory motive, their disparate treatment claims also fail.  Because the Complaint fails to state a claim on either count as to any Plaintiff, the Court must dismiss the official capacity claims in their entirety.

## **BACKGROUND**

### I.    **Plaintiffs' Objections to the Federal Employee Vaccination Requirement.**

On September 9, 2021, the President issued Executive Order 14043, which instructed federal agencies to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all . . . Federal employees, with exceptions only as required by law." 86 Fed. Reg. 50,989, 50,990 (Sept. 9, 2021); *see also Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part, dismissed in part*, 2022 WL 1449180 (4th Cir.

May 9, 2022) (COVID-19 spawned "a public health crisis more severe than any seen for a hundred years")). The State Department subsequently instructed its employees to become vaccinated by November 22, 2021, unless approved for a religious or medical exemption. Am. Compl. ¶ 54-56. Over the coming months, the Department issued several notices encouraging employees and family to get vaccinated, providing information about the vaccine, and reminding employees about the upcoming deadline to vaccinate or request a medical or religious accommodation in accordance with E.O. 14043 and Department policy. *Id.* ¶ 57; Ex. 1, Vaccination Notice (Nov. 19, 2021).[2]

Mr. Thornton sought neither a religious nor medical accommodation to the vaccination requirement (nor to the testing or masking requirements), but rather filed an Equal Employment Opportunity ("EEO") complaint with the State Department on October 28, 2021, which he later formalized as the class complaint which forms the basis for this action, as discussed below. Am. Compl. ¶¶ 67-68. Plaintiffs' Complaint in this action does not clearly state which named Plaintiffs specifically requested medical or religious accommodations to the vaccine and through what means they made their requests, *see id.* ¶ 71 (alleging "upon information and belief" only that "19 filed an actual request for a religious accommodation to the vaccine or did not file a written request (because they objected to the new process put in place solely for the purpose of religious accommodations for the vaccine)"). However, Plaintiffs do allege that the Department expressly granted accommodations to Donald Carroll, Jane Chun, David Guerrero, Christopher Kelly, Christina Williams, and Salima Benabdi, permitting them to test, mask, social distance, and avoid travel in lieu of receiving the vaccine. Am. Compl. ¶¶ 82, 188 n.11. Crucially, as Plaintiffs

---

[2] In ruling on a motion to dismiss, the Court may consider a document submitted by the movant "so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Likewise, when deciding a 12(b)(6) motion to dismiss, a court may permissibly take judicial notice of matters of public record. *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

concede, the Department never denied an accommodation request from any Plaintiff named in this Complaint, but rather permitted all employees who objected to the vaccination requirement on religious grounds to mask, test, socially distance, and avoid travel instead of being vaccinated.  *Id*. ¶¶ 73-74; *see also id*. ¶ 188 n.11 (alleging that Plaintiffs whose accommodations requests were still pending were treated "exactly the same as" those whose requests were granted).

On January 21, 2022—without the Department having denied the accommodation request of any Plaintiff named in this Complaint and without it having imposed discipline on any employee for failing to vaccinate, *see id*.—the United States District Court for the Southern District of Texas issued a nationwide preliminary injunction prohibiting the government from "implementing or enforcing Executive Order 14043." *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836–37 (S.D. Tex.), *vacated and remanded*, 30 F.4th 503 (5th Cir. 2022), *reh'g en banc granted, opinion vacated*, 37 F.4th 1093 (5th Cir. 2022), *aff'd on reh'g en banc*, 63 F.4th 366 (5th Cir. 2023). Immediately after that decision, the State Department informed its employees that it would "suspend the requirement for unvaccinated employees and applicants covered by the E.O. to become vaccinated," and that workplace safety measures—including masking, distancing, travel avoidance, and testing—would remain in place.  *See* Ex. 2, Update on Department COVID-19 Response Efforts at 3 (Feb. 2, 2022); Am. Compl. ¶¶ 84-85.  Effective May 12, 2023, President Biden revoked E.O. 14042 and E.O. 14043, thereby rescinding agency policies premised on E.O. 14042 and 14043 and directing federal agencies to no longer implement or enforce them.  *See id*. ¶ 86; Exec. Order No. 14,099, 88 Fed. Reg. 30,891 (May 9, 2023).

## II.   Administrative Proceedings.

On October 28, 2021, just before the vaccination requirement was enjoined and without ever requesting a religious or medical accommodation to any of the State Department's

vaccination, testing, or screening policies, Mr. Thornton filed an Equal Employment Opportunity ("EEO") complaint, which he formalized as a class complaint on January 27, 2022, and then amended through counsel on March 14, 2022.  Ex. 3, Thornton's EEO Compl. (Jan. 27, 2022).  *See also* Ex. 4, Final Agency Decision at 1 (Oct. 26, 2022).  On March 30, 2022, the Department forwarded Mr. Thornton's putative class complaint to the Equal Employment Opportunity Commission ("EEOC").  *Id*.  The EEOC then permitted Mr. Thornton to further clarify the scope of his claims and his class allegations through responses to requests for information on May 19, 2022, and October 4, 2022.  *Id*.

On October 26, 2022, the EEOC issued a final decision denying class certification and dismissing the class complaint.  *Id*.  Relying on Mr. Thornton's own October 4, 2022 response to a request that he identify the employment policies, practices, or actions at issue in his EEO class complaint, the EEOC construed challenges to the following acts or policies based on alleged religious and "regarded as" disability discrimination:

1. The Agency's use of a "separate, centralized process" for requests for religious accommodations to the Executive Order that "is different from the standard process for requesting religious exemptions and is inferior because it does not involve the local chain of command;"

2. The Agency's exertion of "coercive pressure on those who have religious beliefs opposed to the COVID-19 vaccine to accept the vaccine despite those religious beliefs," which has resulted in "many" employees taking the vaccine "despite religious beliefs to the contrary;"

3. The Agency's failure to acknowledge "legitimate religious beliefs against the COVID-19 vaccine" in its communications "regarding deadlines for vaccination and encouragement for booster shots," which has "increas[ed] pressure on those with religious beliefs against vaccination to accept vaccination;"

4. The Agency's failure to "continue adjudicating religious accommodation request" relating to the COVID-19 vaccine while there is an injunction in place, "leaving religious believers in a months-long state of limbo;"

5. The Agency's discrimination against those it perceives or regards as disabled in "treating all of its employees as though they are carriers or potential carriers of an infectious disease."

6

Ex. 4, Final Agency Decision at 2 (quoting Putative Class Agent's Response to Second Request for Information at 1-2).  In its written decision dismissing the complaint and denying class certification, the EEOC found that "different procedures for vaccinated and unvaccinated employees are not examples of discrimination based on religion or perceived disability, but instead are distinctions based on vaccination status, which is not a protected class," that "emails informing employees of the vaccine mandate and encouraging employees to get vaccinated . . . are not religious discrimination and do not infringe upon employees' exercise of their religious beliefs," and that "an agency holding a request for religious accommodations in abeyance due to the injunction regarding the vaccine mandate does not state a claim because there is no present harm to an employee awaiting a decision on a request."  *Id*. at 4.

### III.    This Litigation.

Plaintiffs filed their Complaint on February 27, 2023.  *See* ECF No. 1.  On March 20, 2023, Plaintiffs filed an Amended Complaint that included individual capacity claims alleging RFRA violations.  *See* ECF No. 7.  On March 21, 2023, Plaintiffs "corrected" their complaint via "Notice of Errata" to include individual capacity claims alleging a RFRA violation.  *See* Notice and Corr. Am. Compl., ECF Nos. 9, 9-1.  On August 21, 2023, Plaintiffs filed a Second Amended Class Complaint dropping several of their claims and limiting their RFRA claim to individual capacity Defendants alone.  *See* Am. Compl., ECF No. 41.  Despite repeated amendments and corrections, however, Plaintiffs have failed to plead sufficient allegations to support a plausible employment discrimination claim against any of the official capacity Defendants.

## <u>LEGAL STANDARDS</u>

This motion raises issues of standing, which implicate the court's subject matter jurisdiction.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  The party asserting federal jurisdiction bears the burden of proof.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

7

"Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Mowery v. Nat'l Geospatial-Intelligence Agency*, 42 F.4th 428, 433 (4th Cir. 2022).   When assessing whether the complaint alleges facts upon which jurisdiction can be based, the court must treat the facts alleged in the complaint as true and grant the motion under Rule 12(b)(1) if the complaint fails to allege sufficient facts to invoke jurisdiction.  *Kerns*, 585 F.3d at 192.

This motion also argues that Plaintiffs' claims fail as a matter of law.  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although "detailed factual allegations" are not necessary to withstand a motion to dismiss, a plaintiff must provide the "grounds" of "entitle[ment] to relief," which requires "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 557).  When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint fails to state a claim for relief.  *Id.*

## **ARGUMENT**

### I.   **ALL OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS BLINKEN, PEREZ, AND BERNICAT SHOULD BE DISMISSED.**

Plaintiffs allege claims of disparate treatment and failure to accommodate in violation of Rehabilitation Act (Count 1) and Title VII (Counts 2 and 3) against the Department of State and Defendants Blinken, Perez, and Bernicat (the "Individual Defendants"), in their official capacities.

8

Plaintiffs' claims against the Individual Defendants in their official capacities are wholly duplicative of the claims against their employer, the Department of State, and should therefore be dismissed. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, the official capacity claims against the Individual Defendants here are "essentially" claims against the Department itself for purposes of Title VII and the Rehabilitation Act. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (citing *Kentucky*, 473 U.S. at 165-66); *see also Simchick v. Fairfax Cnty. Sch. Bd.*, No. 1:05cv1476, 2006 WL 721372, at *3 (E.D. Va. Mar. 20, 2006) (citing *Baird v. Rose*, 192 F.3d 462, 471–72 (4th Cir.1999)). Plaintiffs' official capacity claims against Defendants Blinken, Perez, and Bernicat should therefore be dismissed as duplicative of their claims against the employer, the Department of State. *See Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 788 (M.D.N.C. 2011) (dismissing official capacity employment discrimination claims against individuals as duplicative of claims against the government); *Pettis v. Nottoway Cnty. Sch. Bd.*, No. 3:12-CV-864-HEH, 2013 WL 3063704, at *5 (E.D. Va. June 17, 2013) (same).

## II.     THE REHABILITATION ACT CLAIM SHOULD BE DISMISSED.

In Count 1, Plaintiffs appear to allege three types of disability discrimination under the Rehabilitation Act, led by two putative class representatives: (1) "regarded as" discrimination against an unidentified subclass of non-disabled Plaintiffs led by putative class representative Mr. Thornton, Am. Compl. ¶¶ 144-166; (2) disparate treatment discrimination against a subclass of unidentified disabled Plaintiffs led by Ms. Ballerini-Hougnon, *id*. ¶¶ 167-170; and (3) failure to accommodate the disabilities of another subclass of unidentified disabled Plaintiffs led by Ms.

Ballerini-Hougnon, *id*. ¶¶ 171-173.  In all events, however, Plaintiffs' Rehabilitation Act claims fail as a matter of law, whether based on an actual or regarded disability.

As a threshold matter, Plaintiffs provide no information upon which the Court could conclude that the vast majority of the named Plaintiffs have suffered an adverse employment action motivated by religious or disability discrimination at the hands of the official capacity Defendants. The Complaint's allegations are insufficient to articulate employment discrimination claims because they provide almost no information about the religious beliefs, disability status, vaccination status, accommodation status, or particularized allegations of discriminatory treatment for any of the named Plaintiffs apart from Mr. Thornton, Ms. Ballerini-Hougnon, and Ms. Benabdi. *See id*. ¶¶ 17-40 (alleging only that each is "an individual and current or former employee of the Department").  Indeed, Plaintiffs allege that only 19 of the 25 Plaintiffs named in the Complaint "filed an actual request for a religious accommodation to the vaccine or . . . made their religious objections to the vaccine known," *id*. ¶ 71, that at least two unspecified Plaintiffs took the vaccine while their accommodation was pending, *id*. ¶ 140, that the requests of at least six others were expressly granted, *id*. ¶¶ 75, 82, and that the "Department never explicitly denied" the requests of *any* Plaintiff prior to the recission of the vaccine requirement.  *Id*. ¶ 73.  These employees thus faced neither a  plausible threat of discipline nor a requirement to be vaccinated for purposes of a Title VII or Rehabilitation Act claim.  As to those who have not sought an exemption to the requirements, their claims are likewise "not ripe for judicial resolution" because "[t]here is no indication in the record that [plaintiffs] have availed themselves of the opportunities provided by [a statutory scheme] to obtain administrative relief by requesting either a variance . . . or a waiver." *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 297 (1981).

**A.  Plaintiffs' Perceived Disability Claim Fails.**

10

Plaintiffs' Rehabilitation Act claim fails to the extent that they allege discrimination on the basis of a "perceived disability."  In his EEO class complaint, Mr. Thornton alleged that the Department discriminated against those it perceives or regards as disabled by "treating all of its employees as though they are carriers or potential carriers of an infectious disease," namely, COVID-19.  *See* Ex. 4 at 2 (quoting Putative Class Agent's Response to Second Request for Information); Ex. 3 at 9.  But Federal courts from coast-to-coast have rejected claims that individuals were regarded as disabled based on their unvaccinated status or their susceptibility to COVID-19.[3]  Because Plaintiffs have not and cannot identify any basis to depart from this conclusion,  Plaintiffs' claim based on a perceived disability in the form of an infectious disease fails as a matter of law.

Under the Rehabilitation Act, claims for being regarded as having an impairment that is "transitory and minor," defined as "an impairment with an actual or expected duration of 6 months or less," 42 U.S.C. § 12102(3)(B), are not cognizable.  On this basis, courts "generally agree that a COVID-19 infection is not a disability," because it is "generally transitory."  *Lundstrom v. Contra Costa Health Services*, 2022 WL 17330842 at *5 (N.D. Cal. Nov. 29, 2022) (citing cases).  In a recent case alleging termination based on the perceived disability of susceptibility to COVID-19

---

[3] *See, e.g., Jorgenson v. Conduent Transp. Sols., Inc.*, No. 22-cv-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (employer's "decision to protect its workplace by requiring its employees to attest to their vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); *Gallo v. Wash. Nat'ls Baseball Club*, No. 22-cv-1092, 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) (a person is not "regarded as having" a disability when "an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future"); *Thompson v. City of Tualatin*, No. 21-cv-1587, 2022 WL 742682, at *2 (D. Or. Mar. 11, 2022) (dismissing claim that employer, by applying its COVID-19 masking and vaccination policy, perceived the plaintiff as having a contagious disease); *Shklyar v. Carboline Co.*, No. 22-cv-391, 2022 WL 2867073, at *5 (E.D. Mo. July 21, 2022) ("to infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" policy "would require inferring that [it] regarded all of its . . . employees as having a disability"), *aff'd*, 2023 WL 1487782 (8th Cir. Feb. 3, 2023).

in this District, the court soundly concluded that "possible future exposure to COVID-19 does not constitute an impairment under the ADA." *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 549-50 (E.D. Va. 2022). Thus, an unvaccinated person who is regarded as more likely to contract COVID-19 is, by definition, not perceived as disabled. *Id.*; *see also Leggo v. M.C. Dean, Inc.*, No. 22-cv-374, 2023 WL 1822383, at *4 (E.D. Va. Feb. 7, 2023), *aff'd*, 2023 WL 4700998 (4th Cir. July 24, 2023). This sound reasoning applies directly to the perceived disability claim Plaintiffs attempt to raise here. Thus, as a matter of law, Plaintiffs' unvaccinated status is insufficient to support a claim that they were perceived as disabled.

### B.  Plaintiffs' Alleged Disability Claims Fail.

To the extent that Plaintiffs rely on the alleged disability of Ms. Ballerini-Hougnon to assert independent disparate treatment and failure to accommodate claims, Am. Compl. ¶¶ 167-173, these claims also fail for several reasons. First, Plaintiffs' putative class agent for the alleged disability claims, Ms. Ballerini-Hougnon, failed to exhaust any claims based on her alleged disability. Because "Rehabilitation Act claims against the federal government must comply with the same administrative procedures that govern federal employee Title VII claims," a federal employee alleging disability discrimination must complete the same exhaustion process as for Title VII claims, which is set forth below. *Wilkinson v. Rumsfeld,* 100 Fed. App'x 155, 157 (4th Cir. 2004); 29 C.F.R. § 1614.103(a). That process involves first raising disability discrimination claims during EEO counseling and then, if unresolved, filing a formal complaint with the agency. *See Kirkland v. Mabus*, 206 F. Supp. 3d 1073, 1080 (E.D. Va. 2016). But Ms. Ballerini-Hougnon never informed the agency of any discrimination or failure to accommodate claim based on an alleged disability limiting her ability to vaccinate, test, or wear a mask in her workplace and did not file an EEO claim. *See* Am. Compl. ¶ 81 (alleging only that Ms. Ballerini-Hougnon resigned once she was

"convinced that she would not receive a medical accommodation").  The same is true of Ms. Benabdi, the only other Plaintiff alleging an actual disability in the Complaint.  *See id.* ¶ 82 (failing to allege exhaustion of any claim based on her disability, for which she alleges she received a reasonable accommodation).

Instead, Plaintiffs assert that the exhaustion requirement for all of their Title VII and Rehabilitation Act claims is satisfied through Mr. Thornton alone, *id.* ¶ 90, despite the fact that Ms. Ballerini-Hougnon—not Mr. Thornton—is the only putative class representative for the alleged disability subclass, *see id.* ¶ 95 n.5.  While Mr. Thornton did file an EEO class complaint, the final decision dismissing that complaint and denying class certification makes clear that he did not inform the agency of any discrimination claim based on an actual disability limiting his (or any other Plaintiffs') ability to vaccinate, test, or wear a mask in her workplace in his complaint.  Rather, he alleged only that the Department "discriminat[es] against those it *perceives or regards as* disabled in 'treating all of its employees as though they are carriers or potential carriers of an infectious disease.'" Ex. 4 at 2 (quoting Putative Class Agent's Response to Second Request for Information) (emphasis added); *see also* Ex. 3 at 9 (alleging "discrimination based on perceived disability").  Because neither Mr. Thornton nor Ms. Ballerini-Hougnon (nor any other Plaintiff identified in the Complaint) claimed discrimination based on an actual disability before the agency, they may not do so now in court.  Plaintiffs' disparate treatment and failure to accommodate claims based on actual disability must therefore be dismissed for failure to exhaust.

1.  <u>Disparate treatment.</u>

Dismissal of Plaintiffs' Rehabilitation Act disparate treatment claim is also warranted because Plaintiffs fail to plausibly allege that any individual suffered an adverse employment action because of a disability.  To state a claim for disparate treatment under the Act, a plaintiff

must plausibly allege: (1) she has a disability; (2) she is otherwise qualified for her employment; and (3) she suffered an adverse employment action by reason of her disability. *Hannah P. v. Coats,* 916 F.3d 327, 342 (4th Cir. 2019); *see also* 29 U.S.C. § 791. "[F]or a discrimination claim, the adverse action must result in 'some *significant detrimental effect*[.]'" *Laird v. Fairfax Cnty.*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). Further, "'[i]t is important to separate significant from trivial harms,' as federal employment laws do not create 'a general civility code for the American workplace.'" *Kelly v. Town of Abingdon*, 558 F. Supp. 3d 289, 302 (W.D. Va. 2021) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not" give rise to actionable claims. *Burlington*, 548 U.S. at 68.

Here, Plaintiffs allege that Ms. Ballerini-Hougnon suffered an adverse employment action when she resigned after a conversation with a management officer at the embassy where she worked due to her fear of the impending vaccination requirement (which had yet to take effect), rather than seeking a medical or religious accommodation as the Department allowed. Am. Compl. ¶ 81. She asserts that her resignation amounts to a constructive discharge, *id.* ¶ 169, but her self-inflicted fear of the impending vaccination-or-accommodation deadline falls short of alleging a fairly traceable concrete and particularized injury for purposes of standing under Article III, let alone the significantly higher "intolerable working condition" standard required to state a claim of constructive discharge under *EEOC v. Consol. Energy, Inc.*, 860 F.3d 131, 136 (4th Cir. 2017). *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). This claim also fails because Plaintiffs do not and could not plausibly allege that the vaccination-or-accommodation requirement motivating her resignation was

14

imposed by reason of her disability. This requirement was universally-applicable to all Department employees, *see* Am. Compl. ¶ 55, and the "'fact that employees were treated identically rebuts any inference' of constructive discharge." *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993) (quoting *Johnson v. Bunny Bread Co*., 646 F.2d 1250, 1256 (8th Cir. 1981)).

Plaintiffs have not identified a single similarly situated employee outside of Ms. Ballerini-Hougnon's protected class (*i.e.*, a non-disabled unvaccinated employee) who was not subject to the complained-of vaccination-or-accommodation requirement, or who was otherwise treated more favorably. To the contrary, the Complaint acknowledges that Ms. Ballerini-Hougnon was treated the same as other non-disabled employees, because all of the requirements she complained of were universally imposed regardless of disability status. Plaintiffs expressly concede that the only adverse employment action identified occurred because she was required to be vaccinated, *not* because she was allegedly disabled. *See* Am. Compl. ¶ 169 ("she was constructively discharged, when she was essentially told that she had to take a vaccine"). Because the requirement to vaccinate or obtain a medical or religious accommodation applied equally to all employees regardless of disability status, *see id*. ¶¶ 56, 165, this policy cannot plausibly constitute an adverse employment action imposed on the basis of disability. *See Johnson*, 991 F.2d at 131.

Likewise, Plaintiffs' allegation that Ms. Benabdi agreed to undergo testing as a reasonable accommodation to the vaccination requirement, and then received emails reminding her to send in her test results in accordance with that accommodation, does not amount to an adverse employment action suffered by reason of disability. *See* Am. Compl. ¶ 82. Indeed, Ms. Benabdi's receipt of emails reminding her to submit her test results does not constitute an adverse action at all. *See Leggo*, 2023 WL 1822383, at *4; *Burlington*, 548 U.S. at 68. And here too, Plaintiffs fail to identify any similarly situated employee outside of Ms. Benabdi's protected class or otherwise

15

allege facts giving rise to a plausible inference that the adverse action alleged—adherence to an agreed-to testing program and email reminders sent as a result of that program—were motivated by a desire to discriminate on the basis of disability.  Plaintiffs' Complaint refutes the notion that the Department's testing program amounts to disparate treatment on the basis of disability by simultaneously alleging that other similarly situated employees outside of Ms. Benabdi's protected class were subject to the same procedures.  Am. Compl. ¶ 165 (alleging that "anyone who did not accept the vaccine" was subject to "testing / screening procedures"—not just disabled individuals).

An agency's denial of a reasonable accommodation can itself be an actionable form of disability discrimination under the Rehabilitation Act, as discussed below.  *See Hannah P.*, 916 F.3d at 337.  But a failure to accommodate claim is subject to a distinct analysis which Plaintiffs cannot evade by characterizing universally applicable employment practices as disparate treatment.  Because Plaintiffs fail to plead any facts suggesting that they suffered an adverse employment action due to an unlawful discriminatory motive on the basis of their disability status, their disparate treatment claim must be dismissed.

### 2.   Failure to accommodate disability.

Because Plaintiffs did not exhaust their failure to accommodate claim under the Rehabilitation Act, that claim should be dismissed.  But even if they had exhausted, Plaintiffs' claim that Defendants violated the Act by failing to accommodate Ms. Ballerini-Hougnon's objection to the vaccination requirement would still warrant dismissal because Ms. Ballerini-Hougnon never requested such an accommodation in the first place, nor was she ever subject to the complained-of vaccination requirement prior to her resignation from the Department.  *See Gardner v. Mabus*, No. 2:14CV352, 2014 WL 11512862, at *2 (E.D. Va. Dec. 23, 2014), *aff'd*, 608 Fed. App'x 156 (4th Cir. 2015) ("When an employee fails to request an accommodation, the

employer cannot be held liable for failing to provide it"); *see also Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 745 (10th Cir. 2013) ("[i]t is not the employer's responsibility to anticipate the employee's needs and affirmatively offer accommodation if the employer is otherwise open to such requests"). And as to Ms. Benabdi—the only other Plaintiff with an alleged disability—Plaintiffs concede that she requested, was granted, and agreed to an accommodation relating to the only employment requirement she contested. *See* Am. Compl. ¶ 82.

"To establish a *prima facie* claim of failure to accommodate under the Rehabilitation Act, a plaintiff must demonstrate that (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Hannah P.*, 916 F.3d at 337. Here, Plaintiffs' claim fails because Ms. Ballerini-Hougnon never submitted an accommodation request to the Department's Office of Disability and Reasonable Accommodation at all. *See* Am. Compl. ¶¶ 80-81 (alleging she was "[c]onvinced that she would not receive a medical accommodation"); *see also Works v. Colvin*, 93 F. Supp. 3d 405, 416-17 (D. Md. 2015), *aff'd sub nom. Works v. Berryhill*, 686 Fed. App'x 192 (4th Cir. 2017) (employer's "awareness of" plaintiffs' disability insufficient for failure to accommodate claim where plaintiff "never submitted any such requests" for accommodation). But even if she had, Plaintiffs fail to plausibly demonstrate that the Department refused to make an accommodation to the vaccination requirement or any other requirement available to her. *See, e.g.,* Am. Compl. ¶ 73.

Plaintiffs acknowledge that Ms. Ballerini-Hougnon never actually sought a medical accommodation to any Departmental policy: as the Complaint states, Ms. Ballerini-Hougnon merely "explained to the Management Officer (Mr. Kirby) at the embassy in which she worked[] that the vaccine could kill her," then resigned on October 14, 2021—prior to submitting an actual

accommodation request and prior to the vaccination deadline—because she was "[c]onvinced that she would not receive a medical accommodation." *id*. ¶¶ 80-81.  *Compare id*. ¶ 54 (alleging that employees were required to provide proof of vaccination "by November 22, 2021"), *with id*. ¶ 81 (alleging that Ms. Ballerini-Hougnon resigned "on October 14, 2021"). But Ms. Ballerini-Hougnon's alleged belief that a hypothetical accommodation request would not be granted and that she would then be subject to future discipline does not relieve her of the obligation to request an accommodation prior to filing suit, particularly where her bare assertion of futility is directly refuted by Plaintiffs' own admission that other employees received accommodations to the very same vaccination requirement following their own requests.  *See, e.g.*, *id*. ¶¶ 82, 83(c), 112, 188 n.11 (conceding that Defendants granted the accommodation requests of at least six other named Plaintiffs, among many others).  What is more, the Department's COVID-19 policy expressly provided that the vaccination requirement included medical and religious exemptions, and that "[d]isciplinary action for non-compliance will not be taken against an individual while they have a pending accommodation request," thereby dispelling Plaintiffs' suggestion that the requirement brooked no exception.  Ex. 1 at 4; *see also* Am. Compl. ¶ 56.

Even accepting the allegations contained in the amended complaint as true, then, Plaintiff's assertion that Ms. Ballerini-Hougnon's failure to request a reasonable accommodation should be excused because she believed that such a request would have been futile based on a conversation with a coworker simply does not hold up in light of their pleadings that identify other employees who received medical accommodations after requesting them, *see, e.g.*, *id*. ¶ 82, and their admission that Defendants "never" denied other named Plaintiffs' requests.  *Id*. ¶ 73.  *See, e.g., Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 88-89 (D.D.C. 2021) (rejecting argument that accommodation request would have been futile and dismissing failure to accommodate claim

under Rule 12).  Because Plaintiffs fail to allege that Ms. Ballerini-Hougnon or any other Plaintiff actually sought and was denied a medical accommodation to a Department requirement (and because their Complaint contradicts such an assertion, *see* Am. Compl. ¶¶ 81-82), their failure to accommodate disability claim must be dismissed.

## III.    PLAINTIFFS' TITLE VII CLAIMS SHOULD BE DISMISSED.

Plaintiffs bring two claims under Title VII of the Civil Rights Act of 1964, both with Mr. Thornton as their putative class representative.  The first alleges that Defendants failed to accommodate Plaintiffs' religious needs in violation of Title VII by threatening them with discipline if they failed to seek an accommodation or vaccinate, and by pausing  adjudication of gratuitous accommodation requests in the wake of a nationwide injunction.  *See* Am. Compl. ¶¶ 174-198.  The second alleges that Defendants discriminated against them on the basis of their religion under a disparate treatment theory of discrimination by virtue of the Department's policies for unvaccinated employees.  Am. Compl. ¶¶ 199-205.  As a threshold matter, Plaintiffs' Title VII claims must be limited in scope to those claims which have been properly exhausted.  But even as to those portions which have been exhausted, neither Title VII count states a claim for relief .

### A.  Plaintiffs' Title VII Claims Are Limited by Exhaustion Requirements.

Only those claims that Plaintiffs properly and timely exhausted with the agency are eligible for litigation.  To exhaust a discrimination claim, an employee must alert an EEO counselor of any alleged discrimination or retaliation within forty-five days of the relevant conduct. 29 C.F.R. § 1614.105(a).  If the counselor cannot resolve the issue, the employee is notified of her right to file a formal complaint, triggering a fifteen-day window to do so.  *Id.*  Upon receipt of a final agency decision disposing of an administrative complaint, the employee has either 30 days to appeal to the EEOC, *id.* §§ 1614.401(a), 1614.402(a), or 90 days to file suit in federal court, 42

U.S.C. § 2000e-16(c).  The scope of the lawsuit a plaintiff may file in court is limited to the scope of a plaintiffs' administrative complaint, and a court is only permitted to consider the allegations raised during the administrative process.  *See Williams v. Mancom, Inc.*, 323 F. Supp. 2d 693, 695 (E.D. Va. 2004) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

During the course of the administrative process, the EEOC provided Mr. Thornton the opportunity to "provide supplemental information regarding the specific employment policies, practices, or actions at issue" in the EEO class complaint that Plaintiffs allege forms the basis of this suit.  *See* Ex. 4, Final Agency Decision at 2; Am. Compl. ¶ 90 (asserting exhaustion on the basis of Mr. Thornton's EEO complaint alone).  In his October 4, 2022 response to this request for information, Mr. Thornton, through counsel, expressly identified the claims at issue in his EEO complaint.  *See* Ex. 4 at 2 (quoting Putative Class Agent's Response to Second Request for Information at 1-2); *supra* 6.  This description of the employment policies, practices, and actions at issue provided to the EEOC by Mr. Thornton mirrors the claims raised in his amended EEO complaint.  *See* Ex. 3 at 4-11  Thus, to the extent Plaintiffs' Title VII counts extend beyond these claims, those portions of Plaintiffs' claims must be dismissed for failure to exhaust.  This includes claims relating to a variety of alleged conduct, including Mr. Thornton's unexhausted discrete allegations that he was: "prevented from entering campus during mandatory training" in summer 2022, Am. Compl. ¶ 11, "denied [] travel and training opportunities, specifically in May, 2023, to be trained as an EEO counselor," *id*. ¶ 13, erroneously placed on leave without pay while on parental leave, *id*. ¶ 14, denied use of his annual and parental leave and put on notice of possible involuntary curtailment on July 5, 2023, *id*. ¶ 15, and prohibited from attending foreign language school, *id*. ¶ 183.  But even as to those issues which Plaintiffs have properly exhausted, they fail to state a claim for failure to accommodate or for disparate treatment.

**B.  Plaintiffs Fail to Allege an Unlawful Denial of Religious Accommodation.**

At the heart of Plaintiffs' Title VII failure to accommodate claim (Count 2) is Mr. Thornton's allegation that the Department failed to accommodate Plaintiffs' religious objections to the vaccine mandate when it stopped adjudicating accommodation requests in response to a nationwide injunction that his own organization, Feds for Medical Freedom, sought and obtained in *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, and instead permitted all employees to mask, test, socially distance, and avoid travel rather than receive a vaccine.  *See* Am. Compl. ¶¶ 16, 73-75, 188, 196-97.  Importantly, Plaintiffs do not even attempt to claim that they hold any "bona fide religious belief[s] that conflict[] with an employment requirement" other than the vaccination requirement.  *Consol. Energy*, 860 F.3d at 141;  *see* Am. Compl. ¶ 181 (alleging only that Plaintiffs "had sincere religious beliefs that conflicted with receiving the vaccine").  Therefore, any failure to accommodate challenge to the Department's masking, testing, screening, or other COVID-19 mitigation policies would fail to state a claim even if it had been exhausted.  And because no Plaintiff was disciplined for failure to comply with the complained-of vaccination requirement, but instead was  provided the reasonable accommodation of masking, testing, social distancing, and travel avoidance while the requests remained pending, the Complaint fails to state a claim for failure to accommodate.

Title VII makes it unlawful to take an adverse employment action because of an individual's religion. 42 U.S.C. § 2000e-16(a). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."  § 2000e(j).  Thus, it is

unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees." *Trans World Airlines v. Hardison*, 432 U.S. 63, 74 (1977).

To establish a *prima facie* religious accommodation claim, a plaintiff must show that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Consol. Energy*, 860 F.3d at 141. "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996)). To satisfy its burden, "the employer must demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship," *id.*—that is, that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [Defendant's] particular business." *Groff v. DeJoy*, No. 22-174, 2023 WL 4239256, at *11 (U.S. June 29, 2023). But "where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end[,]" because "the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986). Plaintiffs fail to plead a *prima facie* case in multiple respects.

1.  <u>Plaintiffs were not disciplined for failure to comply.</u>

Even assuming  the sincerity of any religious beliefs the Title VII Plaintiffs may hold with regard to the vaccination requirement itself (although only Mr. Thornton's religious objections are explained in the pleadings), no Plaintiff credibly alleges that they failed to comply with the

vaccination requirement and was then disciplined for that failure to comply. *See id.* ¶ 73 (conceding that "[t]he Department never explicitly denied Plaintiffs' requests" for accommodation); Ex. 1 at 4 (stating that employees would "be considered compliant" if they "request an accommodation [and] confirm they have submitted that request on the Certification of Vaccination form"). At most, Plaintiffs allege only that the Department "threatened" discipline, but explicitly provided that such discipline would only be imposed if they "failed to be vaccinated *without an approved accommodation*." Am. Compl. ¶ 185 (emphasis added); *see also* Ex. 1 at 4 ("[d]isciplinary action for non-compliance will not be taken against an individual while they have a pending accommodation request as long as they have submitted the Certification of Vaccination form noting that they have requested an accommodation"). This allowance for reasonable accommodations is all that Title VII requires. *See Philbrook,* 479 U.S. at 68. Moreover, "threats" of hypothetical future discipline do not suffice for a failure to accommodate claim. *See, e.g., Isse v. Am. Univ.*, 540 F. Supp. 2d 9, 29 n.24 (D.D.C. 2008) (observing the lack of precedent indicating that an employee need only show "threatened" adverse treatment to state a failure to accommodate claim). Instead, Plaintiffs must show that they were actually "disciplined for failure to comply." *Consol. Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017). Because Plaintiffs do not allege that they violated an employment requirement that conflicted with their religious beliefs and were disciplined for doing so, their failure to accommodate claim is subject to dismissal.

Having failed to allege that any Plaintiff was actually subject to "discipline[]" at the hands of Defendants for their failure to comply with the enjoined vaccine mandate, *Consol. Energy*, 860 F.3d at 141, Plaintiffs assert instead that they have been harmed by the Department's mere failure to process gratuitous requests for exemption to a vaccination requirement which no longer applied to them in the wake of the nationwide injunction in *Feds for Med. Freedom v. Biden*, 581 F. Supp.

3d 826.  Am Compl. ¶¶ 84-86, 196-97.  In effect, Plaintiffs complain that the Department did not voluntarily convert the court's preliminary injunction in that case into a permanent one, instead of holding their accommodation requests in abeyance while suspending the vaccine requirement until a final judgment was reached.  But Plaintiffs' anxiety about the speculative possibility that they may someday fail to comply with a now-defunct vaccine requirement, and then in turn be subject to hypothetical discipline, falls far short of the *prima facie* case under Title VII.  Indeed, such "a highly attenuated chain of possibilities[]" does not even satisfy the requirements of Article III injury.  *Clapper*, 568 U.S. at 410; *see also id*. at 416 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

Plaintiffs' sole argument to the contrary is their conclusory assertion that "'a week-to-week, wait-and-see posture' amounts to no accommodation at all," quoting *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 945 (6th Cir. 2006) (citing *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991)).  But the opinion Plaintiffs quote is inapposite—that case did not involve a situation where an employer held requests in abeyance while providing a reasonable accommodation, as Defendants have done here.  Rather, it involved an employer who used an *ad hoc* schedule as the accommodation itself.  *See EEOC v. Arlington Transit Mix*, *Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("At the point Taylor was told he could no longer count on leaving early every Wednesday, the old accommodation was discarded, and the company adopted a week-to-week, wait-and-see posture that amounted to no accommodation at all").  Defendants' decision to hold in abeyance accommodation requests imposed no harm on Plaintiffs and does not amount to an unlawful denial of accommodation, because Plaintiffs do not allege that they were actually subject

to discipline for their failure to comply—all employees were exempted from the requirements of the vaccine mandate while their request remained pending.  *See* Ex. 1 at 4.

2.     <u>Defendants provided a reasonable accommodation.</u>

Even if Plaintiffs could demonstrate that they had been disciplined for failure to comply with the complained-of vaccination requirement (which they cannot since the requirement was not imposed on them), the Department has met its burden because it offered a reasonable accommodation here, as the Complaint makes clear.  *See* Am. Compl. ¶¶ 73-75 ("The Department never explicitly denied Plaintiffs' requests," rather, it permitted employees who sought accommodations to mask, test, distance, and avoid travel).  While Plaintiffs may have disliked these  accommodations, that does not mean they were not reasonable[4]—nor do Plaintiffs allege that they had any religious grounds to oppose the Department's commonsense masking, testing, distancing, and travel policies in their own right.  *See id.* ¶ 181 (alleging only that Plaintiffs "had sincere religious beliefs that conflicted with receiving the vaccine").  Indeed, courts across the country have repeatedly found that accommodations such as masking, testing, social distancing, and travel restrictions do not violate federal employment discrimination law as a response to COVID-19.  *See, e.g., Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 708 (C.D. Cal. 2022) (no Title VII violation because employees were eligible for religious exemptions that required testing and masking); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458 (M.D. Pa. 2022)

---

[4] EEOC Guidance explicitly permits the Department's accommodations.  *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* EEOC at K.2, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (May 15, 2023) ("as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19 . . . be given the opportunity to telework, or finally, accept a reassignment."); *see also Sowers v. Bassett Furniture Indus.*, No. 4:19-CV-39, 2021 WL 276169, at *10 (W.D. Va. Jan. 27, 2021) ("Although the EEOC's guidance is not controlling, it is entitled to some deference").

(dismissing Title VII challenge to employer's requirement that unvaccinated employees submit to COVID-19 tests twice per week or be dismissed).  Defendants "need not provide the employee with his or her preferred accommodation." *Firestone Fibers*, 515 F.3d at 313 (citing *Philbrook*, 479 U.S. at 68-69).  "Rather, so long as the employer has offered a reasonable accommodation, it has fulfilled its duty under Title VII." *Id.*  The Department has done so here, so "the statutory inquiry is at an end." *Philbrook,* 479 U.S. at 68.[5]

### C. Plaintiffs Fail to Allege Adverse Action Motivated by Religious Animus for Their Disparate Treatment Claim.

Just as was the case for their Rehabilitation Act disparate treatment claim, Plaintiffs again fail to allege sufficient facts to plausibly show that their employer acted with a discriminatory motive when it implemented its universally-applicable COVID-19 policies.  *See supra* 14-16. Indeed, much of the conduct Plaintiffs identify does not constitute actionable adverse employment action at all.  Under Title VII, it is unlawful to take an adverse employment action because of an individual's religion. 42 U.S.C. § 2000e-2(a)(1).  When bringing a claim for disparate treatment without direct evidence, a plaintiff must use the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, the plaintiff must establish a *prima facie* case by showing "(1) [s]he belongs to a protected class; (2) [s]he suffered an adverse [personnel] action; (3) at the time of the adverse [personnel] action, [s]he was performing h[er] job at a level that met h[er] employer's legitimate expectations"; and (4) the adverse personnel action occurred under "circumstances [that gave] rise to an inference of unlawful discrimination." *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011).  Thus, to plead a cause of action,

---

[5] Because Plaintiffs fail to allege an unlawful denial of religious accommodation in the first instance, the Court need not consider whether "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [Defendants'] particular business." *Groff v. DeJoy*, No. 22-174, 2023 WL 4239256, at *11 (U.S. June 29, 2023).

a plaintiff must at a minimum allege facts showing both that they suffered an "adverse action", and that there exists an "inference of discrimination" or a causal connection between being in a protected class and the adverse action. *Id.* Failure to do so warrants dismissal.

Plaintiffs allege several instances of "disparate treatment" in their Complaint, *see* Am. Compl. ¶ 203, but only those raised in Mr. Thornton's EEO class complaint before the agency are properly before this Court. *See supra* 6, 19-20. These include the agency's use of a "different and more invasive procedure for requesting religious accommodation" to the COVID-19 vaccination requirement, use of masking, testing, distancing, and travel avoidance practices as a reasonable accommodation to Plaintiffs' objection to the vaccination requirement, and the Department's decision to hold in abeyance gratuitous accommodation requests as described above. *See* Am. Compl. ¶ 203. Plaintiffs also assert, in a conclusory fashion, that the Department "fostered a pervasive environment of religious discrimination," *id.* ¶ 205, when it pressured them to become vaccinated by encouraging employees to get vaccinated in agency-wide communications, without "acknowledg[ing] those employees who have religious objections. *Id.* ¶¶ 57-60; Ex. 4 at 2. Many of these acts do not qualify as adverse employment actions in the first instance, but even as to those which may qualify based on relevant facts and circumstances, Plaintiffs do not even attempt to demonstrate discriminatory motive, as they make no allegation of "different treatment from similarly situated employees outside the protected class." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019).

An adverse employment action is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland*, 487 F.3d at 219 (quoting *James v. Booz-Allen & Hamilton. Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Examples include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced

opportunities for promotion[.]" *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).  In stark contrast, Plaintiffs allege they were discriminated against in part because they received agency-wide emails informing employees of the vaccine mandate and encouraging employees to get vaccinated, and because the Department created a new form for its reasonable accommodation request process to handle the influx of COVID-related requests and paused its adjudication of accommodation requests in compliance with a nationwide injunction.  These claims set forth only "trivial harms," "petty slights," and "minor annoyances" rather than the requisite  materially adverse actions.  *Burlington*, 548 U.S. at 68; *see also Leggo*, No. 2023 WL 1822383, at *6 (similar efforts to "impose the COVID policy" did "not sufficiently allege adverse action or causation" for discrimination claim).  Nor is it remotely plausible that the Department developed a new accommodation request process, paused adjudication of requests in compliance with a nationwide injunction, and sent emails encouraging employees to get vaccinated, "not as a response to newly available vaccines against a novel virus, but as part of a prejudicial crusade against religion." *Shane v. Bio-Techne Corp.*, No. CV 22-3039 (JWB/ECW), 2023 WL 3936638, at *6 (D. Minn. June 9, 2023) (dismissing similar claims with prejudice).

Plaintiffs allege no facts giving rise to a reasonable inference that any of the complained-of acts were motivated by a desire to discriminate against them due to their religious faith.  In fact, their Complaint alleges the opposite.  *See, e.g.*, Am. Compl. ¶ 165 (alleging that "anyone who did not accept the vaccine" was subject to "testing / screening procedures"—not just disabled or religious individuals alone).  Bare assertions of discriminatory motive are not enough.  *See McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) (plaintiff's allegations that defendant did not hire her "because its decision makers were biased" were "simply too conclusory" and too reliant on speculation to state a plausible Title VII claim).

As with their Rehabilitation Act claim, Plaintiffs fail to identify a single similarly situated employee outside of their protected class (*i.e.*, a non-religious unvaccinated employee) who was not subject to the vaccination-or-accommodation requirement and associated procedures, or who was otherwise treated more favorably.  Instead, their Complaint refutes this suggestion by alleging the Department imposed the complained-of policies on unvaccinated employees altogether, not just employees who were unvaccinated for religious reasons.  Am. Compl. ¶¶ 51, 54-56, 165.  At most, then, Plaintiffs allege that the Department imposed different procedures for vaccinated and unvaccinated employees, permitting those who are unvaccinated to mask, test, distance, and avoid travel in lieu of receiving a vaccination.  *See id*. ¶ 204 (alleging that "[i]ndividuals who did not file a request for a religious (or medical) accommodation," *i.e.*, those who were vaccinated,  "were not isolated from others, denied travel and training opportunities, [] discharged from the positions [or] 'outed' as having a religious objection to the vaccine by being forced to uselessly mask or test in front of strangers on a video screen").  But the existence of different procedures for differently situated employees are not examples of discrimination based on religion, but instead distinctions based on vaccination status, which is not a protected class.  Indeed, courts across the country have repeatedly found that such acts do not constitute discrimination in violation of Title VII.[6]

---

[6] *See, e.g., Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023) ("Plaintiffs have not and cannot state a disparate treatment claim.  All vaccination-exempt employees were treated the same, regardless of the reason for exemption"); *Burcham*, 562 F. Supp. 3d at 708 (no Title VII violation because employees were eligible for religious exemptions that required testing and masking); *Shane*, 2023 WL 3936638, at *6 (Title VII complaint alleging that employer "simply did not want unvaccinated employees to be present in their facilities" failed where plaintiff "cannot plausibly claim that Bio-Techne treated him and other religious objectors differently from *non*-religious objectors"); *Finkbeiner*, 623 F. Supp. 3d 458 (dismissing Title VII challenge to employer's requirement that unvaccinated employees submit to COVID-19 tests twice per week or be dismissed); *Bezzina v. United Airlines, Inc.*, 2022 WL 878921, at *6 (C.D. Cal. Feb. 24, 2022) (plaintiff failed to make a prima facie showing of discrimination where employer required him to wear a face mask and placed him on unpaid leave until such time as he complied or the mask requirement was lifted).

## IV.   PLAINTIFFS' CLASS ACTION CLAIMS SHOULD BE DISMISSED.

For the reasons set forth above, this action should be dismissed because Plaintiffs fail to state a claim on behalf of their putative class representatives, or any other Plaintiff identified in the Complaint, under the Rehabilitation Act or Title VII.   And because the claims of all named Plaintiffs (including those of putative class representatives Marcus Thornton and Marie Ballerini-Hougnon) fail as a matter of law, "it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove," thereby warranting dismissal of the action in its entirety.  *County of Dorchester v. AT&T Corp.,* 407 F. Supp. 3d 561, 565-66 (D.S.C. 2019) (dismissing class allegations before the plaintiff filed a motion for class certification).

Dismissal of class complaints at the motion to dismiss stage, before a plaintiff has filed a motion for class certification, is routine practice in this Circuit and in courts across the country upon a finding that the complaint fails to state a claim as to the named Plaintiffs.  *See, e.g., Rosenfield v. Wilkins*, 468 F. Supp. 2d 806, 807 (W.D. Va. 2006), *aff'd*, 280 F. App'x 275 (4th Cir. 2008) (dismissing underlying claims without addressing class certification); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878 (S.D.W. Va. 2020), *aff'd*, 27 F.4th 926 (4th Cir. 2022) (same).  *See also Eye Care Ctr. of New Jersey, PA v. Twin City Fire Ins. Co.*, 522 F. Supp. 3d 72, 78 (D.N.J. 2021), *aff'd sub nom. Wilson v. USI Ins. Serv*. LLC, 57 F.4th 131 (3d Cir. 2023) ("Because [plaintiff] fails to state an individual claim, its claims on behalf of a class fail too") (citing *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("[T]o be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim")).  Because Plaintiffs fail to state a claim with respect to the putative class representatives and all other Plaintiffs identified in the Complaint, the Court need not wait for a motion for class certification to dismiss the class claims and enter judgment of dismissal.  Instead, Plaintiffs' putative class action Complaint should be dismissed in its entirety.

**CONCLUSION**

All claims against the official capacity Defendants should be dismissed with prejudice.


Dated:  September 20, 2023                    Respectfully submitted,

JESSICA D. ABER
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Branch Directors

ANDREW J. RISING (D.C. Bar #1780432)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 11406
Washington, D.C. 20530
(202) 514-0265
Andrew.J.Rising@usdoj.gov

  /s/ _____ ___
Lauren A. Wetzler (VSB #93902)
Chief, Civil Division
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3752
Fax:  (703) 299-3983
Email: lauren.wetzler@usdoj.gov

*Counsel for Official-Capacity Defendants*