IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARCUS THORNTON, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>ANTONY J. BLINKEN, in his official capacity as Secretary of the U.S. Department of State and in his individual capacity, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:23-cv-0266-PTG-IDD |

**MEMORANDUM IN OPPOSITION TO**
**OFFICIAL-CAPACIT Y DEFENDANTS' MOTION TO DISMISS**

# CONTENTS

I. INTRODUCTION................................................................................................................4

II. LEGAL STANDARDS .......................................................................................................6

III. ARGUMENT .......................................................................................................................7

    a. The Court should allow Plaintiffs to brief and Argue the class issue before it rules on Defendants' motions to dismiss.…………………………....... 7

    b. Plaintiffs' Title VII claims are valid................................................................8

        i. Exhaustion requirements................................................................8

        ii. Plaintiffs have alleged a denial of religious accommodation and they were disciplined as a result of that accommodation....................8

    c. Plaintiffs have alleged a denial of religious accommodation and they were disciplined as a result of that accommodation...............................................8

    d. Plaintiffs assert valid Rehabilitation Act claims...........................................10

    e. Plaintiffs articulated actionable disability claims.........................................12

IV. WITHDRAWAL OF CLAIMS..........................................................................................14

V. CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Edwards v. City of Goldsboro*,
    178 F.3d 231, 243 (4th Cir. 1999) ...........................................................................................6

*EEOC v. STME, LLC*,
    938 F.3d 1305, 1315 (11th Cir. 2019) ...................................................................................11

*Feds for Med. Freedom v. Biden,*
    63 F.4th 366 (5th Cir. 2023) ....................................................................................................4

*Harrison v. United States Postal Serv.*,
    840 F.2d 1149, 1152 (4th Cir. 1988) .......................................................................................6

*Hice v. Mazzella Lifting Techs., Inc.*,

    589 F. Supp. 3d 539, 550 (E.D.Va. 2022) ..................................................................................11

*Leggo v. M.C. Dean, Inc.*,

    2023 U.S. Dist. LEXIS 21561 (E.D.Va. 2023) .........................................................................11

*Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*,

    142 S. Ct. 661 (2022) ...................................................................................................................4

*Renne v. Geary*,

    501 U.S. 312, 316 (1991) .............................................................................................................6

*Republican Party v. Martin*,

    980 F.2d 943, 952 (4th Cir.1992) .................................................................................................7

*U.S. Navy Seals 1-26 v. Biden*,

    27 F.4th 336, 350 (5th Cir. 2022) ................................................................................................9

**Statutes and Other Authorities**

42 U.S.C. § 12102(3)(B) ...............................................................................................................12

Maegan Vasquez, *Biden announces measures to incentivize COVID-19 vaccinations, including a requirement for federal employees*, CNN.com, (July 29, 2021), available at https://www.cnn.com/2021/07/29/politics/joe-biden-vaccination-requirement-announcement/index.html. ........................................................................................................5

I.   **INTRODUCTION**

Plaintiffs, a putative class of individuals, have brought suit to have their claims adjudicated as a class in the Fourth Circuit, a circuit where Courts are "especially solicitous" of civil rights claims receiving analysis at the motion to dismiss phase. They seek redress for a suite of harms that the Government wants the Court to overlook.

To recount those harms: the Biden Administration decided by Executive fiat that all two million members of the federal civilian workforce must take a vaccine that the Trump Administration pushed pharmaceutical companies to develop at "warp speed," utilizing mRNA technology, which is a technology that had never been tried on humans. That first-of-its-kind test for humanity was less than a year old at the time, but by then, everyone knew that the vaccines did not prevent the spread of the disease. At best it reduced symptoms. By definition it could not, in other words, fulfil the purpose for which the mandate existed.

The highest court to opine on the subject (an *en banc* panel of the Fifth Circuit) has found that the Administration's Executive Order was likely unlawful and upheld an exhisting injunction. *See, Feds for Med. Freedom v. Biden,* 63 F.4th 366 (5th Cir. 2023). The Supreme Court also found its private-sector counterpart to be likely unlawful. *Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*, 142 S. Ct. 661 (2022). In the intervening time—the time between the announcement of the mandate and the passing initial deadlines and a nationwide injunction preventing enforcement of the mandate—many thousands, or perhaps tens of thousands, or perhaps hundreds of thousands, we will never know—took the vaccine against their religious beliefs, their health concerns, convictions of conscience, or better judgement, because they wanted to save their livelihoods. Some of those we know became sick or otherwise came to regret their decision. Some died.

As Plaintiffs noted in their complaint, the Administration, through an anonymous official, announced to the world that their goal was to "render being unvaccinated so burdensome that those who haven't received shots will have little choice other than to get them."[1] It is not outside the realm of possibility, or even the realm of likelihood, then, that vaccination at the price of religious conviction and medical concerns was the result the Administration, with the help of the U.S. Department of State and its officials, intended.

Plaintiffs endured the tension between their personal religious convictions and their livelihood from the announcement of the vaccine mandate until the recission of the mandate in May of 2023—a year and eight months. Every day for a year and eight months they arrived to work thinking that they could be secure in the careers that they poured so much into, they could stop fighting with the employer and colleagues they had revered and gotten along with for so long before the arrival of the vaccine, simply by going against their religious faith. This is a tension that no American should endure for even a day, let alone for 20 months. Defendants urge the court to narrow this timeline to the time of the nationwide injunction against the mandate in January of 2022, but plaintiffs are sophisticated enough to know that a lower court injunction could disappear at any time so long as the government is challenging it, which it did vigorously.

In the meantime, Plaintiffs were made to "out" and disadvantage themselves in a work setting over an issue that had become radioactive with politics and emotion. They became the only employees who had to mask and test, who had to distance, who could not attend an event or travel, *even though everyone else could also spread COVID*. And why? Because of their

---

[1] Maegan Vasquez, *Biden announces measures to incentivize COVID-19 vaccinations, including a requirement for federal employees*, CNN.com, (July 29, 2021), available at https://www.cnn.com/2021/07/29/politics/joe-biden-vaccination-requirement-announcement/index.html.

religious beliefs or a medical condition, and in all cases because the Department perceived them to have an infectious disease.

All of this entered into a context awash in resources devoted to diversity and inclusion. Every federal employee undergoes rigorous training on DEI, every federal agency staffed with offices and attorneys who do nothing but work to make the federal government hospitable to a wide variety of identities, backgrounds, and perspectives, which is what the law requires. In the context of religious belief and disability, Defendants had a *legal obligation* to try to accommodate.

The Government, as it must, argues that this constant pressure on religious belief, bodily integrity, and matters of conscience cannot constitute a claim for which relief can be granted, that it is necessary to dismiss before the putative class can make the argument that it is a class and can have a chance to make its case at the trial phase. This Court should deny the Government's Motion to Dismiss.

## II.     LEGAL STANDARDS

### a. Rule 12(b)(1)

In a motion to dismiss for lack of jurisdiction under Federal rule of Civil Procedure 12(b)(1), courts "presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991)(internal citations omitted). It is furthermore "the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Id.*

### b. Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) "is to test the sufficiency of a complaint." *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) The Rule "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Id*, citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). A Rule 12(b)(6) motion should only be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id.* There is an additional consideration when, as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, in that the reviewing Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id,* citing *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988).

### III.    ARGUMENT

**a. The Court should allow Plaintiffs to brief and Argue the class issue before it rules on Defendants' motions to dismiss.**

As indicated in a separate motion, Plaintiffs assert that this Court should consider its motion for class certification before it decides on Defendants' motions to dismiss. *See*, Mot. for Court to Order Briefing and Argument of Class Cert. Before Consid. of Mot. to Dismiss, Docket No. 55. This will allow the Court to consider additional facts that bear on the arguments that Defendants assert in their motions to dismiss. This motion will include sworn affidavits from members of the putative class.

Defendants themselves in their Motion to Dismiss resort to speculation about which putative class members belong where. *See*, Mem. in Support of Off. Cap. Def. Mot. to Dismiss,

Docket No. 51 at 9-10. ("In Count 1, Plaintiffs appear to allege three types of disability discrimination under the Rehabilitation Act, led by two putative class representatives[.]") It then goes on to attempt to fault Plaintiffs for not providing additional detail about their individual experiences, although they have opposed briefing and argument of the class issue before consideration of these motions to dismiss. *Id* at 10. It has been Plaintiffs' intent to clarify these questions in a memorandum in support of class certification. The clarity that would come from such an opportunity would help the consideration of this motion.

    **b. Plaintiffs' Title VII claims are valid.**

        **i. Exhaustion requirements.**

Mr. Thornton's complaint alleges religious discrimination arising out of a claim that he brought as part of his Agency's Equal Employment process. He converted it into a formal complaint and then a class complaint, with the putative class members mentioned in the complaint as members of the putative class at the administrative level. An Administrative Judge considered those claims and dismissed them.

Since his original complaint, he has experienced additional discrimination and retaliation that are the subject of a new process and that remain at the Agency level. Mr. Thornton mentioned some of these additional incidents in the Amended Complaint to illustrate that the discrimination by his Agency is ongoing, not to bring claims that have not been exhausted before the Court. These additional incidents are not mentioned in the Second Amended Complaint.

        **ii. Plaintiffs have alleged a denial of religious accommodation and they were disciplined as a result of that accommodation.**

Plaintiffs who had a religious belief against the vaccine did not receive accommodation

8

and instead received punishment in the form of physically uncomfortable and socially humiliating masking, testing, and distancing requirements, coupled with travel and event restrictions that promised to limit their ability to gain experience and advance.

Government Defendants describe these punishments as accommodations [*See*, Mem. in Sup. of Off. Cap. Def. Mot. to Dismiss at 21, (the Department "permitted all employees to mask, test, socially distance, and avoid travel…")] when this is precisely what the Plaintiffs contest, and precisely what caused them injury. Accommodations tend not to make professional life "so burdensome that those who haven't received shots will have little choice" than to violate one's religious beliefs or quit. Punishments do.

The 5th Circuit has found that simply the choice between one's religious belief and his job, without more, is injury in itself, describing it as "directly burden[ing Plaintiffs'] respective faiths by forcing them to inject an unremovable substance at odds with their most profound convictions. This injury would outlast their […] service, making the decision whether to acquiesce far more difficult than just choosing between 'their job(s) and their jab(s)'. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022). Although this case law does not come from the Title VII context, it is nonetheless instructive here. Defendants failed to accommodate, and this resulted in injury.

Defendants went far beyond imposing only the tension between Plaintiffs' religious belief and livelihood. Instead, they imposed onerous masking mandates, uncomfortable testing procedures, and most critically to the employment context, limited travel for these State Department employees. At least one putative class member was unable to apply for a promotion.

Defendants characterize these actions as accommodations, while Plaintiffs characterize these actions as punishments and failures to accommodate. To determine which is the more

9

accurate characterization, it is necessary to consider these actions in light of the government's desire, noted above, to render being unvaccinated "so burdensome" for employees that they have "little choice" other than to violate their religious belief or quit. These requirements must also receive consideration against what the government and the public knew about the vaccines' efficacy and their ability to stop the spread of COVID-19, which they did not, as Plaintiffs noted in their complaint. *See*, Second Am. Comp., docket No. 41 at 9-10. When it is public knowledge that vaccinated individuals could, and did, spread COVID, there is no justification for exempting them while requiring religious objectors to mask and test, other than the desire to punish those religious objectors for their religious beliefs.

Defendants failed to accommodate the Plaintiffs and punished them for their religious beliefs so that they would take the vaccine or quit. Set within the broader context of what was occurring at the time, there is no other reasonable way to view these requirements.

### c. Plaintiffs assert valid Rehabilitation Act claims

Plaintiffs' perceived disability claims under the Rehabilitation Act claims are based on the operation of the mandates themselves, which it is important to note, were extraordinary and unprecedented measures that courts determined to be likely unlawful. A vaccination has only achieved something if it prevents an illness the recipient would have received otherwise, or if it prevents the spread of an illness that the recipient would have spread otherwise. The COVID vaccine, of course, did neither of these things, but it is this danger—of being sick and spreading it—that the vaccine is supposed to prevent. By the operation of the mandate itself, then, the Agency was acting as though Plaintiffs were sick. Ditto the masking and testing requirements. They are unnecessary unless a person is sick and are therefore based on the perception that a person is sick.

10

Plaintiffs acknowledge that some courts have examined this issue and declined to take their view, to the extent that these cases actually present similar arguments. *See* Mem. in Support of Off. Cap. Def. Mot. to Dismiss Docket No. 51 at 11, note 3. For its part, cases from the Eastern District of Virginia discuss age as a risk factor to COVID-19, which is not at issue here, *See*, *Hice v. Mazzella Lifting Techs., Inc*., 589 F. Supp. 3d 539, 550 (E.D.Va. 2022) ["Plaintiff's conclusory allegations that Defendants perceived his age as a disability because it is a COVID-19 risk factor are insufficient to state a claim under the ADA." *Hice* itself cites case law from the Ebola context, where a person was fired before traveling to Ghana, where she might contact the disease. The question of vaccination was not at issue. *EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019)].

The question here is not about heightened risk factors as opposed to others among the general population—the question here is whether Plaintiffs had COVID or not, and the Department's perceptions of the same.

*Leggo v. M.C. Dean, Inc.*, 2023 U.S. Dist. LEXIS 21561 (E.D.Va. 2023) is more factually adjacent, where the *pro se* plaintiff was asserting a perceived disability claim over his employer's vaccination policy. That policy, however, was one of masking plus vaccination attestation / survey, rather than a requirement for the vaccine. *Id* at 5 (citing a communication from the Plaintiff's employer: "[I]t is our understanding that the job site you are currently assigned to does not require you to be vaccinated, nor does it require a weekly COVID test.")

An inquiry into whether a person has received a vaccine is different from a requirement that the individual become vaccinated, and especially so in the context of a perceived disability context . *Leggo* is inapposite.

11

As for the question of whether COVID is "transitory or minor," 42 U.S.C. § 12102(3)(B), this may be the case for COVID itself, but the perception on the part of the Agency was that Plaintiffs were disease vectors whose presence necessitated ongoing testing, masking, distancing, and travel restrictions in the absence of vaccination. The perception of a transitory and minor disability was not transitory and minor.

Defendants imposed vaccine, masking, and testing requirements and travel restrictions on Plaintiffs. This was to prevent the danger of their spreading an infectious disease. Absent an infectious disease, the requirements and restrictions would be utterly arbitrary and capricious. The vaccine requirements are based on the perception of infectious disease and constitute discrimination on the basis of perceived disability.

### d. Plaintiffs articulated actionable disability claims

Defendants seek to dismiss claims based on disparate treatment and failure to accommodate disability, which is based on the mention of putative class member Ms. Ballerini-Houghnon, who declined the vaccine and resigned because of concerns over her health.

To begin, this discussion from Plaintiffs' perspective is out-of-order. According to Plaintiffs' attempts to form a class, and subclasses, of Department employees, Plaintiffs ought to have a chance to propose their vision of how such claims might be organized, along with more detailed description of the harms they suffered.

As for Ms. Ballerini-Hougnon, it is perhaps best to quote from the affidavit that she prepared for these purposes:

> I served my nation in the United States Army for nearly 14 years. I am a veteran of foreign wars. I am rated as 100% disabled, permanent and total, by the Veterans Administration for injuries sustained while on active duty status. I objected to taking the Covid-19 vaccine because I have a neurological medical condition I sustained while serving in the United States Army. The reason for my

12

objection for not taking the Covid-19 vaccine due to my neurological medical condition […]

On June 28, 2021, I sought the assistance from the Regional Medical Officer, Bob Shim, MD, whom I contacted via e-mail, requesting a medical exemption. On June 28, 2021, I received a response from Dr. Bob Shim advising that "...none of the conditions [I] listed are contraindications to COVID vaccination, particularly with the mRNA vaccines which carry no risk of blood clots. On June 28, 2021, Dr. Bob Shim declined my request for a medical exemption memorandum, but provided me with a 'memorandum' I suppose in an attempt to quell my anxiety of having to provide vaccination status in order to participate in society, and to travel within or outside of Kuwait.

I did not file an accommodation request because I did not know I could apply for one; I did not know how to apply for one; we were not provided with any guidance, either by the Health Unit medical staff, Human Resources department, or Management Office personnel. The only guidance we were given was "…the Covid-19 vaccine is mandatory and required in accordance with the President's Executive Order or you risk losing your job."

On or about September 20, 2021, I was verbally informed by my Management Officer, Kirby Nelson, that I would be required to take the Covid-19 mRNA vaccination series and be fully vaccinated by November 22, 2021, in order to remain employed as the CLO to U.S. Embassy-Kuwait.

On or about September 20, 2021, I told Kirby Nelson that this was clearly discrimination[.] Kirby literally laughed aloud […] and asked, "How is this discrimination? You have a choice to take the vaccine. You choose not to." My response was, I can't because it could kill me!

On or about September 27, 2021, in accordance with the "mandatory vaccination requirement' that falls under, "Executive Order on Requiring Coronavirus Disease 2019 Vaccination for Federal Employees" I tendered my resignation to Kirby Nelson, Management Officer, giving my last date of employment as October 14, 2021. I loved my position as the CLO. I was loved, admired, appreciated and respected by embassy personnel and their families. I was chastised repeatedly for not wanting to get the Covid-19 vaccine and boosters.

Defendants characterize this fact pattern as a failure to exhaust her administrative claims, when the fact pattern tells a much different story, one where the Department through its representative(s), Dr. Shim and others, appear to have obscured the accommodations process

13

available to Ms. Ballerini-Houghnon, treating her legitimate service-related health concerns as a laughing matter.

### IV.     WITHDRAWAL OF CLAIMS

Plaintiffs seek to withdraw all claims against defendants Blinken, Perez, and Bernicat in their official capacity. Similarly, Plaintiffs seek to withdraw all claims based on the disparate-impact theory of discrimination. Plaintiffs will accordingly file notices of withdrawal for these claims.

### V.      CONCLUSION

Plaintiffs seek the opportunity to articulate their claims for the certification of classes and sub-classes of litigants based on the experience of the putative class members who have already become part of this effort, which has not yet occurred. Official-capacity defendants acted in a manner that constitutes religious discrimination / failure to accommodate and disability discrimination. This Court should deny official-capacity Defendants' motion to dismiss the claims remaining in their amended complaint, and Plaintiffs should have the opportunity to brief the class-certification issue.

Dated: October 20, 2023                                          Respectfully submitted,

_____

E. Scott Lloyd
Virginia Bar # 76989
Lloyd, Lemmon, and Hale, PLLC
15 Chester St
Front Royal, VA 22630
(540) 823-1110
scott@lloydlemmonhale.com
*Counsel for Plaintiffs*

14